IN RE APPLICATIONS T-61 AND T-62 AND APPROPRIATIONS D-785
AND D-795 OF THE BLUE CREEK IRRIGATION DISTRICT.
BLUE CREEK IRRIGATION DISTRICT, APPELLANT, V. J. MICHAEL
JESS, DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES, STATE
OF NEBRASKA, ET AL., APPELLEES.
440 N.W.2d 466

Filed May 26, 1989.   No. 88-666.

Jess C. Nielsen, of Nielsen & Birch, for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers
for appellee director.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and
FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

BOSLAUGH, J.

Blue Creek Irrigation District (District) has appealed from
the order of the director of the Department of Water Resources

denying applications T-61 and T-62 filed by the District requesting transfers of water rights under appropriations D-785 and D-795. The order also canceled a part of the appropriation D-785.

Blue Creek is a stream that originates in Garden County, Nebraska, and flows generally from north to south until it flows into the North Platte River just west of Lewellen, Nebraska. Water appropriations D-785 and D-795, which are owned by the District, have priority dates of December 27, 1893, and September 27, 1894. Both are permits to divert water from Blue Creek into the Blue Creek Canal system for irrigation. The headgate is located in the northwest quarter of the southwest quarter of Section 33, Township 17 North, Range 42 West of the 6th P.M., in Garden County, Nebraska.

The applications were filed on February 24, 1988. The notice of hearing, which was dated March 4, 1988, stated department records indicated that a part of the land had not been irrigated for more than 3 consecutive years and that the hearing would be to determine whether the applications should be approved and whether part of the appropriations should be canceled because of nonuse.

The land which is involved in this proceeding is located in Sections 8 and 17 in Township 16 North, Range 42 West of the 6th P.M., in Garden County, Nebraska. Appropriation D-785, which has the earlier priority, is referred to in the record as the "original filing." Appropriation D-795 is referred to as the "Winters filing."

Application T-62 sought to transfer 1 cubic foot per second of water from 71 acres of land located in the east half of Section 17 under the original appropriation, D-785, to 71 acres of land in the east half of the northwest quarter of Section 17, which is under the Winters appropriation, D-795. Steve Cochran, the president of the District, is the owner of the land described in application T-62. In his testimony he described the purpose of the transfer as follows:

> A. Well, I have 95 acres underneath the original filing which is located in the east half of Section 17-16-42 and I have 68 acres of Winters filing located in the east half of the — the east half of the west half of 17-16-42, and right

now I'm irrigating the original filing or a portion thereof with center pivot irrigation and usually sometime between a five and the ten, the fifth — and the 15 of July why Winters filing is withdrawn from the ditch due to over appropriation. So I'm trying to move original filing over to the Winters filing so that there is no problem on irrigating the flood crops on that.

. . . .

Q. Okay. Now then, where is the Winters filing land shown on this map or is it shown on Exhibit 3?

A. Well, the Winters filing is the 68 acres that is now shown on this map as 71 acres. I wanted to add three acres to it because during the survey of '84 why three acres of my trees were left out, you know, that were watered yearly and somehow something happened that they were, you know, left out. I want them put back in.

Q. Now, is it my understanding that the 71 acres are acres that are not now a part of either filing; is that correct?

A. No.

Q. They were eliminated?

A. No. No.

Q. All right.

A. The 71 acres is now the 68 acres that is underneath the Winters filing.

Q. Okay. And so you're willing to transfer land from the original filing to the Winters filing?

A. Correct.

Application T-61 sought to transfer .97 cubic feet per second of water from the 68 acres of land in the east half of the northwest quarter of Section 17, which is under the Winters appropriation, to a 7-acre tract located in the southwest corner of the southeast quarter of Section 8, which is owned by Daryn D. Mapel, and to 61 acres of land located in the southwest quarter of Section 8, which is owned by Burdette H. Pickard. Cochran explained the purpose of this transfer as follows:

Q. We want to talk about item 61.

A. Okay. There was 68 acres of Winters filing on Section 17 that I'm attempting to transfer to Section 8.

. . . .

Q. (By Mr. Nielsen) Now, do you own the land in the — that's identified as 61 and the 7?

A. No.

Q. Who owns that land?

A. Seven acres belong to Daryn Maple who lives at Goleta, California, and which was originally underneath the Blue Creek Irrigation District that was deleted in '76 or '77 because of non water use.

Q. Uh-huh.

A. And the 61 acres are located above the Blue Creek Irrigation District which are are [sic] now watered by pump irrigation, and we were just trying to leave it in the district.

Q. So then how would you water the 61 acres out of the canal?

A. Well, that belongs to Mr. Pickard and that would be watered by pump and pipeline.

Q. All right.

MR. LAMBERSON: You're talking irrigation by pump from the canal or irrigation by pump from a well?

THE WITNESS: It is now watered by pump from a well.

MR. LAMBERSON: Okay.

THE WITNESS: But it would be watered from pump by the irrigation canal.

An objection to the applications was filed by the Paisley Irrigation District, which has an appropriation to divert water from Blue Creek that is junior to those of the District.

The hearing was held on April 20, 1988. The applicant's motion to bifurcate the hearing was sustained so that the evidence relating to the applications to transfer was heard before the evidence as to nonuse.

Cochran testified that he was trying to get the original filing moved over to the Winters filing because the Winters filing is withdrawn from the ditch about every July 15 because Blue Creek is over appropriated and the District is not able to divert as much water as its appropriations authorize. By the 5th or 10th of July, the prior filings take their full appropriations, and

the creek runs dry. He testified that the District does not get any partial use of water when the creek runs dry and is allowed only to divert or not divert. Cochran concluded that the proposed transfer would not increase the amount of water diverted from Blue Creek. He stated that the Hooper district and the Union district have appropriations with priority over the District's appropriations. Neither Union nor Hooper objected to the applications for transfer. Cochran was not aware of any riparian water user who objected to the transfer applications. He testified that the source of the water would be the same—from the Blue Creek basin.

Cochran further testified that he has an irrigation well in the southeast quarter of Section 17 and that the land from which he wanted to transfer the water rights was irrigated by this well through a center pivot sprinkler system. His other center pivot is located in the northeast quarter of Section 17. He claims this area was irrigated from the canal on the surface in 1985. He testified that he cut two openings in the ditch, that the water flowed to the land for 6 to 8 hours from one opening, and that the other ran about 2 to 3 hours. He was experimenting to see if he could get a better crop by using more water and decided it would be helpful, but the sandy soil conditions would make it difficult to flood irrigate. Cochran testified that he told Thomas Hayden from the Department of Water Resources that the land had not been irrigated from the creek since 1975, but thought that Hayden was asking about active, yearly irrigation.

Pickard testified that the 61 acres of land in the southwest quarter of Section 8 could be irrigated by gravity irrigation from his wells. Although not a director of the District, he testified that he supported the application for transfer and that he did not think any other riparian water user would be affected by the proposed transfers.

Donald Fischer and Richard Fischer testified that if the transfers were granted, land that had not previously been watered out of Blue Creek would be watered and the water supply of the Paisley Irrigation District would be diminished. They testified that waste water from any District irrigation could not run back into the canal for use by Paisley.

Hayden, a water specialist for the Department of Water

Resources, testified that he had made a report of his field inspection with regard to the transfer applications in this case. Hayden met Cochran at his farm on March 1, 1988, and inspected the land to see if there was a canal and to find out how Cochran would apply the water to the land. Hayden testified that Cochran said that he had not irrigated the land from the canal except for 9.5 acres in the northeast quarter in 1985. Cochran and Hayden inspected the land which was subject to transfer, and there was a center pivot irrigation system on the land. Hayden then prepared exhibits 6 and 7 based on what Cochran told him and on Hayden's own observations. After the inspection, Cochran called Hayden and wanted to change the field report.

Hayden's report relating to application T-62 states:

Of the following land mentioned above only 9.5 acres located in the NE¼NE¼ and the NE¼SE¼NE¼ of Sec. 17 have been irrigated during the last three years from water out of the Blue Creek Canal. This land is flat and close to the Blue Creek Canal. The remainder of the land mentioned above covered in this investigation is all irrigated by two center pivots with water from a groundwater well.

Mr. Cochran told me in 1985 he irrigated 9.5 acres located in the NE¼NE¼ and the NE¼SE¼NE¼ of Sec. 17 from water out of the Blue Creek Canal. Mr. Cochran said the remainder of the land covered in this report mentioned above has not been irrigated from water out of the Blue Creek Canal since 1979. He said the reason being the two center pivots. Mr. Cochran said it is his opinion, with the new law LB198, Incidental and Intentional Underground Water Storage, he is irrigating this land with water from the Blue Creek Canal.

Exhibit 7, relating to application T-61, states:

The land is all gravity irrigated. The water is delivered to this land through a 15 inch underground pipe, which is attached to a turnout from the Blue Creek Canal, located in the bottom of Sec. 8, Twp. 16, Rge. 42.

Mr. Cochran told me he irrigated all the land in the E½NW¼ of Sec. 17 last irrigation season with water out

of the Blue Creek Canal. Mr. Cochran said he put the underground pipe in that delivers water from the Blue Creek Canal to this land, so if water was not available from the canal he could pump ground water into it.

. . . .

In conclusion, from my visual observations, I can say all the land in the E$\frac{1}{2}$NW$\frac{1}{4}$ of Sec. 17 was irrigated with water out of the Blue Creek Canal last irrigation season.

The hearing officer took judicial notice of the record of the hearing held May 9, 1984, which resulted in the cancellation of some irrigation rights from the Blue Creek Canal.

On June 21, 1988, the director found that both appropriations, D-785 and D-795, had been examined for nonuse and orders of adjudication were entered March 4, 1985, and December 17, 1984, and that the department had erred in the adjudication in 1984 with regard to the cancellation of parts of the appropriation. The director found that the field investigation revealed that some of the lands involved in the applications had not been irrigated from the Blue Creek Canal for more than 3 consecutive years. An appropriation or a part of one that has been canceled for nonuse has no existence and cannot be transferred. For that reason it must first be determined whether a valid appropriation exists prior to considering whether the location of use can be transferred. The evidence that Cochran had experimented with water from the canal in 1985 did not constitute a beneficial use as contemplated by the statute and would not sustain the appropriation. That part of water appropriation D-785 amounting to .88 cubic feet per second for 61.5 acres in the east half of Section 17 was canceled because a contrary finding would result in the diversion of water for the irrigation of lands not actually served, resulting in a reduced supply for Paisley and other junior appropriators, and because the public interest would not be served. Application T-62 was denied, and at the request of the District, application T-61 was denied. The District had requested that unless both applications were granted, both should be denied.

The District's petition for rehearing was denied, and it has appealed.

The assignments of error can be summarized as follows: The director erred (1) in hearing the abandonment issue when it was not raised in the applications for transfer, (2) in finding there was a nonuse with no excuse for the preceding 3 years, (3) in requiring that the transfer applications be made in the name of the District, (4) in allowing the objection of Paisley Irrigation District, (5) in failing to grant the transfers, and (6) in "correcting" the order and findings made following the hearing of May 9, 1984.

The standard of review for an appeal from an order of the Director of Water Resources "is to search only for errors appearing in the record; i.e., does the judgment conform to law, is it supported by competent and relevant evidence, and was the action neither arbitrary, capricious, nor unreasonable?" *In re Application A-15738*, 226 Neb. 146, 152, 410 N.W.2d 101, 105-06 (1987).

With regard to the appellant's first assignment of error, the issue is whether the director erred as a matter of law in hearing the nonuse issue when that issue was not raised by the application. Neb. Rev. Stat. § 46-229.02 (Reissue 1988) provides:

> If it shall appear that any water appropriation has not been used for some beneficial or useful purpose . . . for more than three consecutive years, the department shall appoint a place and time of hearing, shall serve notice upon the owners of such water appropriation or such ditch, canal, or other diverting works to show cause by such time and at such place why the water appropriation owned by such person should not be declared forfeited and annulled because such water appropriation had not been used for more than three consecutive years prior to receiving such notice, and shall also serve such notice upon the landowners under such water appropriation, ditch, or canal. . . .

A water appropriation may be canceled by the department without complying with sections 46-229.01 to 46-229.04 if the owner of such appropriation fails to comply with any of the conditions of approval in the permit.

The appellant contends that consideration of nonuse in a hearing on an application for transfer is not a proper procedure. In *State v. Nielsen*, 163 Neb. 372, 381, 79 N.W.2d 721, 728 (1956), this court held:

The procedure referred to in sections 46-229 to 46-229.05, R.R.S. 1943, has to do with cancellation of irrigation rights and is not exclusive. The courts of this state have recognized two methods of loss of irrigation rights independent of statutory procedure for cancellation by the department of such rights. These two methods may be classified as abandonment of water rights, or nonuser of such rights for the period of statutory limitations relating to real estate.

The statutory procedure set out in Neb. Rev. Stat. § 46-229.04 (Reissue 1988) is not the exclusive procedure for canceling water rights. When an application is made to transfer water rights which no longer exist because of nonuse, the director may cancel the rights in the transfer proceeding if the evidence shows that the rights have expired through nonuse. It should be obvious that a right which does not exist should not be transferred.

The record supports the finding that the irrigation rights which were canceled had not been used for 3 years and, therefore, supports the finding that application for transfer T-62 be denied.

The report of Hayden, the field investigator for the department, was properly admitted at the hearing.

(1) At such hearing the verified field investigation report of an employee of the department shall be prima facie evidence for the forfeiture and annulment of such water appropriation. If no one appears at the hearing, such water appropriation or unused part thereof shall be declared forfeited and annulled. If someone interested appears and contests the same, the department shall hear evidence, and if it appears that such water has not been put to a beneficial use or has ceased to be used for such purpose for more than three consecutive years, the same shall be declared canceled and annulled unless the department finds that there has been sufficient cause for

such nonuse as provided for in subsection (3) of this section.
§ 46-229.04.

In *In re Water Appropriation Nos. 442A, 461, 462, and 485*, 210 Neb. 161, 167, 313 N.W.2d 271, 275 (1981), this court held in an appeal from a proceeding canceling appropriations for nonuse:

> The statutes provide that in the first instance the Department bears the burden to establish nonuse for the statutory period. All that need be done to establish that fact is the verified report of the Department. Once that report is presented by the Department, then a hearing may be held if requested by the appropriators, at which time the appropriators must show cause why the appropriation should not be terminated. The language of the statute clearly indicates that the burden is upon the appropriator to present evidence showing either that water was taken, contrary to the report filed by the Department, or that some excuse existed for the water not being taken.

The District did not contest the findings of the field report and did not offer any evidence contrary to what Hayden reported other than Cochran's testimony. There was no evidence of an excuse for failure to irrigate.

Cochran testified that in 1985 he had irrigated one portion of a field for 6 to 8 hours and another portion of the field for 2 to 3 hours as an experiment to see if he could use the surface water. This is consistent with the field investigator's report. The director's finding that this experimentation was not a beneficial *use* of the water appropriated for irrigation purposes was correct.

In *Hostetler v. State*, 203 Neb. 776, 280 N.W.2d 75 (1979), this court considered the definition of "beneficial use": "[B]eneficial use requires, in the case of an appropriation for irrigation purposes, actual application of the water to the land for the purpose of irrigation." *Id.* at 781, 280 N.W.2d at 78. The court held that the diversion of some amount of water into the irrigation ditch without application to the land, after the field inspection, did not constitute a beneficial use. Short periods of irrigation are not sufficient to defeat the finding that the land

had not been irrigated. A few hours of irrigation is insufficient to constitute a beneficial use of water appropriated to the District for irrigation of the land. It is clear from the record that the land has not been irrigated from the canal since 1979. Since 1979, the land has been irrigated by a center pivot sprinkler system, with underground wells as a water source.

If the District wanted to claim that the nonuse was excused, it was incumbent on the District to show that the nonuse was excused under § 46-229.04, which provides:

(2) If it is determined that such water has not been put to beneficial use or has ceased to be used for such purpose for more than ten consecutive years, the water right shall be declared canceled and annulled, except that for any water appropriation or part of a water appropriation on any tract of land under separate ownership, sufficient cause for nonuse shall be deemed to exist even if the period of nonuse was for more than ten consecutive years if the landowner used the available water supply on only part of the land under the water appropriation because of an inadequate water supply.

(3) If the period of nonuse did not exceed ten consecutive years, sufficient cause shall be deemed to exist if such nonuse was a result of one or more of the following:

(a) The land subject to the appropriation was placed under an acreage reserve or production quota program or otherwise withdrawn from use as required for participation in any federal or state program;

(b) Federal, state, or local laws, rules, or regulations temporarily prevented or restricted such use;

(c) The available water supply was inadequate to enable the owner to use the water for a beneficial or useful purpose;

(d) Use of the water was unnecessary because of climatic conditions;

(e) Circumstances were such that a prudent person, following the dictates of good husbandry, would not have been expected to use the water;

(f) The works, diversions, or other facilities essential to

use of the water were destroyed by a cause not within the control of the owner of the appropriation, and good faith efforts to repair or replace the works, diversions, or facilities have been and are being made;

(g) The owner of the appropriation was in active involuntary service in the armed forces of the United States or was in active voluntary service during a time of crisis; or

(h) Legal proceedings prevented or restricted use of the water.

The department may specify by rule and regulation other circumstances which shall be deemed to constitute sufficient cause.

The only evidence presented which might constitute an excuse was Cochran's statement that the sandy condition of the soil made irrigation from the canal difficult. No other evidence of excuse was provided.

With regard to the assignment of error relating to the requirement that the transfer applications be brought in the name of the District, the statute allowing for transfers states:

Any person having a permit to appropriate water for beneficial purposes issued pursuant to Chapter 46 who desires to transfer the use of such water appropriation to a different location within the same river basin than that specified in the permit shall apply for approval of such change to the Department of Water Resources.

Neb. Rev. Stat. § 46-290 (Reissue 1988).

The statute requires that the person having the permit apply for the transfer. There is nothing in the record which shows that any person other than the District owns appropriations D-785 and D-795. This assignment of error has no merit.

The District contends that the Paisley Irrigation District should not have been allowed to object because its water appropriation rights would not have been affected by the transfers. Paisley was authorized to object to the transfers by Neb. Rev. Stat. § 46-291 (Reissue 1988), which provides in part: "The notice shall state that any person may in writing object to and request a hearing on the application at any time prior to the elapse of two weeks from the date of final

publication."

The evidence shows that a part of the land in question had not been irrigated from the canal for some time. The Paisley district appropriation, which is junior in priority to the District's appropriations, would have less water in the creek to satisfy its appropriation if the transfers were allowed. If the transfers were granted, there would be a greater use of water by the District, leaving less water in the creek for Paisley. Paisley's objection was relevant and was properly considered by the director.

In considering an application for a transfer of water rights, the director is to consider whether the change of location will diminish the supply of water otherwise available and whether the requested change is in the public interest. Neb. Rev. Stat. § 46-294(3) and (5) (Reissue 1988). Paisley's objections specifically raised these two considerations, which the director could consider in granting or denying the transfers.

Finally, the District assigns as error the "correction" by the director of the order entered following the May 9, 1984, hearing. The order of the Director of Water Resources dated March 4, 1985, found that the lands subject to the T-62 transfer request were being irrigated prior to the order. At the 1984 hearing, Cochran testified that he was irrigating the land subject to application T-62 with two center pivots, that the District was recharging his well used by the pivots, that outside of the pivots he actively flood-irrigated the land, and that the seepage went south into the area irrigated by the pivots. No hydrologist testified at either the 1984 or the 1988 hearing that the water pumped from the center pivot wells was actually water from the Blue Creek Canal. The finding in 1984 that Cochran was irrigating the land from the Blue Creek Canal appears to have been erroneous. The testimony from both hearings supports the director's 1988 order. In any event, Cochran has not used water directly from the Blue Creek Canal for surface irrigation for at least 3 consecutive years and has not provided evidence of an excuse. Pursuant to the statutes, the water right was properly canceled.

The order on the present applications was entered June 21, 1988, more than 3 years after the prior order. It is the duty of the

Department of Water Resources to review the use of water to see that it is being used beneficially. Neb. Rev. Stat. § 46-229 (Reissue 1988) provides:

> All appropriations for water must be for some beneficial or useful purpose and, except as provided in sections 46-290 to 46-294 [intrabasin transfers], when the appropriator or his or her successor in interest ceases to use it for such purpose for more than three consecutive years, the right ceases.

The department has a duty to review periodically the use of water in Nebraska. Use of water may change from time to time, requiring a change in a previous order.

The 1984 decision did not prevent the director from now finding that the land has not been irrigated and that cancellation of the water right was appropriate.

The order of the director is affirmed.

AFFIRMED.