IN RE ESTATE OF WALTER SNOVER, DECEASED.
WILLIAM G. LINE, PERSONAL REPRESENTATIVE OF THE ESTATE OF WALTER SNOVER, DECEASED, APPELLANT, V. MERRILL SNOVER ET AL., APPELLEES.
443 N.W.2d 894

Filed August 11, 1989.   No. 87-1058.

William G. Line, of Kerrigan, Line & Martin, pro se.

Charles H. Wagner, of Edstrom, Bromm, Lindahl & Wagner, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Dodge County order reversing the order of the county court for Dodge County and removing appellant, William G. Line, as personal representative of the Walter Snover estate.

On January 10, 1986, Line was appointed personal representative of the Walter Snover estate. On March 11, 1986, appellees beneficiaries Merrill Snover and Dorothy Willnerd filed a petition for supervised administration of the estate. Although the transcript contains no written order, the record shows that supervised administration of the estate was ordered by the county court during a hearing on April 4, 1986. On May 12, 1987, appellees filed a motion to remove Line as personal representative and for the return of estate assets.

After a hearing, appellees' motion was overruled by the county court because "[t]he beneficiaries have failed to prove the delay in the administration of this estate is the fault of the personal representative." Appellees timely appealed to the district court. Line moved to dismiss the appeal for lack of a final order.

On October 2, 1987, the district judge found (1) that the decision of the county court overruling the beneficiaries' motion to remove Line as personal representative was a final appealable order; (2) that there was a valid order entered by the county court on January 23, 1987, with the consent and concurrence of Line, that Line would within 45 days resolve any problems concerning the estate, complete the federal estate tax return, and submit a proposed plan and proposed order of distribution or advise the county court and counsel of any adjustments necessary; (3) that Line failed totally to comply with the January 23 progression order; (4) that Line "failed to file a Federal Estate Tax Return and has failed to pay any tax due, which tax liability now continues to draw interest and penalties"; (5) that Line paid, without prior court approval, attorney fees and personal representative fees, contrary to the order for supervised administration; and (6) that Line breached his duty to the court and to the estate and should be removed. The district court reversed the county court ruling and remanded the cause to the county court with directions to remove Line as personal representative. Line timely appealed to this court.

In this court, Line assigns seven errors, which may be summarized as the district court's errors: (1) in finding that the order of the county court overruling appellees' motion to remove Line as personal representative was a final order which could properly be appealed to the district court; (2) in finding that court approval was necessary to pay attorney fees or personal representative fees or that payment of such fees was contrary to an order for supervised administration; and (3) in removing Line as personal representative absent any error on the record made in the county court. We affirm the action of the district court.

Line first contends that the order of the county court overruling appellees' motion to remove him as personal representative was not a final order appealable to the district court. This question is determinative of the district court's and our jurisdiction over this matter. See, *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989); *In re Interest of C.D.A.*, 231 Neb. 267, 435 N.W.2d 681 (1989); Neb. Rev. Stat.

§ 24-541.01(2) (Cum. Supp. 1988).

The Nebraska Probate Code is set out in Neb. Rev. Stat. §§ 30-2201 to 30-2902 (Reissue 1985). Section 30-2217 provides that appellate review under the code is governed by Neb. Rev. Stat. § 30-1601 (Reissue 1985), which, in turn, provides that "[i]n all matters arising under the Nebraska Probate Code, appeals shall be allowed as provided in sections 24-541.01 to 24-541.10 and 24-551." Section 24-541.01(2) provides, "In cases of appeals from . . . proceedings under the Nebraska Probate Code, an appeal may also be taken by any person against whom the final judgment or final order may be made or who may be affected thereby." Neb. Rev. Stat. § 25-1902 (Reissue 1985) defines a final order as "an order affecting a substantial right made in a special proceeding . . . ."

The issue presented in Line's first assignment of error is whether the order of the county court dismissing appellees' motion to remove the personal representative was made in a special proceeding and affected a substantial right.

We have held:

> An order affecting a substantial right, when made in a special proceeding is a final order and is appealable, even though it does not terminate the action, nor constitute a final disposition of the case. A special proceeding may be said to include every special statutory remedy which is not in itself an action.

*Sullivan v. Storz*, 156 Neb. 177, 180, 55 N.W.2d 499, 502 (1952). See, also, *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980); *Western Smelting & Refining Co. v. First Nat. Bank*, 150 Neb. 477, 35 N.W.2d 116 (1948); *Turpin v. Coates*, 12 Neb. 321, 11 N.W. 300 (1882).

Neb. Rev. Stat. § 25-101 (Reissue 1985) provides that there is "but one form of action, which shall be called a civil action."

> The code [of civil procedure] does not contain a definition of an action or a special proceeding but it does declare that there is but one form of action to be called a civil action, and the procedure for commencing and pursuing it to a final conclusion is prescribed. . . .
>
> Any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of

a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by the code and ending in a final judgment is an action. Every other legal proceeding by which a remedy is sought by original application to a court is a special proceeding. A special proceeding within the meaning of the statute defining a final order must be one that is not an action and is not and cannot be legally a step in an action as a part of it. None of the many steps or proceedings necessary or permitted to be taken in an action to commence it, to join issues in it, and conduct it to a final hearing and judgment can be a special proceeding within the terms of the statute. A special proceeding may be connected with an action in the sense that the application for the benefit of it and the other papers and orders concerning it may be filed in the case where the record of the filings in the action are [sic] made—as for instance garnishment or attachment—but it is not an integral part of or a step in the action or as it is sometimes referred to in such a situation a part of the "main case."

*Rehn v. Bingaman,* 157 Neb. 467, 478-79, 59 N.W.2d 614, 620-21 (1953) (Boslaugh, J., concurring).

The Nebraska Probate Code applies to the affairs and estates of decedents. Section 30-2454 confers upon persons interested in an estate the specific right to petition the county court to remove the personal representative for cause at any time. We hold that a proceeding under § 30-2454 to remove a personal representative for cause is a special proceeding within the meaning of § 25-1902.

This court also has stated that "[a] substantial right is an essential legal right as distinguished from a mere technical one." *Sullivan v. Storz, supra* at 180, 55 N.W.2d at 502; *Western Smelting & Refining Co. v. First Nat. Bank, supra; Egan v. Bunner,* 155 Neb. 611, 52 N.W.2d 820 (1952). Sections 30-2462 to 30-2482 confer upon the personal representative broad powers to administer and distribute a decedent's estate. Section 30-2465 provides that the personal representative may, in most cases, proceed without adjudication, order, or direction of the county court. Section 30-2464 provides that the personal

representative has a duty to settle and distribute the estate as expeditiously and efficiently as is consistent with the best interests of the estate and must use his authority for the best interests of successors to the estate.

Given the scope of the personal representative's power over the interests of the beneficiaries and other interested parties in an estate, the right conferred by § 30-2454 to petition the county court to remove the personal representative for cause is a substantial right.

In this case, after a hearing on the merits, appellees' motion to remove Line as personal representative was denied by the county court. The order of the county court was made in a special proceeding and affected the substantial rights of the appellees. As such, it was a final order appealable to the district court. Appellant's first assignment of error is without merit.

We determine that this court has jurisdiction and we review this probate case for error appearing on the record. *In re Estate of Peterson*, 232 Neb. 105, 439 N.W.2d 516 (1989); *In re Estate of Miller*, 231 Neb. 723, 437 N.W.2d 793 (1989).

The record shows that the decedent, Walter Snover, had four children: W. Dale Snover, Clara Anson, and appellees Merrill Snover and Dorothy Willnerd. On January 7, 1981, Walter Snover, Merrill Snover, and Dorothy Willnerd filed a petition seeking protective proceedings under §§ 30-2631 et seq. The petition sought the appointment of a conservator for Walter Snover's affairs and alleged, in part, that appointment of a conservator was necessary because Walter Snover was unable to handle his affairs due to his age and physical condition. The petition prayed that First National Bank & Trust Company of Fremont be appointed conservator of the estate of Walter Snover. On January 22, 1981, however, Walter Snover (apparently with the support of his son Dale) filed an amended petition praying that Donald E. Morrow be appointed conservator of his estate. Line witnessed Walter Snover's signature on the amended petition. Over the objections of Merrill and Dorothy, Morrow was appointed conservator on February 9, 1981. Morrow subsequently retained Line as his counsel in the conservatorship proceedings.

The conservatorship file shows a history of conflict between

Dale, on the one hand, and Merrill and Dorothy, on the other, regarding the administration of their father's estate. These disputes included a sale of land by Morrow to Dale Snover at less than fair market value and the withdrawal of $225,000 from the First National Bank of Hooper and its subsequent reinvestment in a bank in Blair, where Dale Snover did business.

A journal entry dated March 31, 1982, shows that Morrow tendered his resignation "in the interest of the settlement of all disputes between the parties" and that the resignation would take effect when all applications for counsel fees and expenses were determined.

On April 16, 1982, the county court approved a family settlement agreement executed by Merrill, Dorothy, Clara, and Dale. These parties agreed (1) that Merrill, Dorothy, and Clara would not seek to set aside the sale of real property to Dale; (2) that Dale, Dorothy, and Merrill would continue to operate the farms of Walter Snover that "each of them now operates on the basis of an oral lease from year to year"; (3) that any claims and demands existing in favor of Walter Snover against his children, or in favor of the children against their father, or claims and demands among the children, would be treated as satisfied and discharged; and (4) that Line and appellees' attorney, Neil Schilke, would be appointed coconservators of the estate. The agreement also stated that the conservatorship

> proposes to make gifts equally to the families of Dorothy Willnerd, Merrill Snover, and Dale Snover, and to the family of Clara Anson . . . . Such gifts are to be in the amounts sufficient to take maximum advantage of federal gift and estate tax laws and in amounts consistent with the best interest of the protected person.

At this time, Walter Snover, the father of all the parties to the agreement and the owner of all the property involved, apparently was not able to play any role in the disposal of his property.

Morrow filed an application for fees on April 23, 1982, seeking a $5,000 conservator fee and attorney fees to Line's law firm in the amount of $4,289.38. On May 3, Schilke filed an application seeking $2,485.08 in attorney fees for his representation of Merrill and Dorothy in the conservatorship

proceedings. Predictably, a fee dispute followed. The county court eventually authorized fees in the amounts of $4,589.38 to Line's firm, $1,188 to Schilke, and $2,509.45 to Morrow. We note that out of a total of $15,877.38 in attorney fees, $11,289.38 was disbursed to Line's firm during the conservatorship.

Although Morrow's resignation became effective and Line and Schilke were appointed coconservators on July 30, 1982, no acceptance of appointment or letters of coconservatorship were filed until December 9, 1983, and Morrow continued to act as conservator and file reports in the conservatorship. After Merrill and Dorothy objected to Morrow's report of June 11, 1983, the county court appointed an accounting firm to examine the conservator's records. The court's order of September 19 further provided that no further acts be performed by Line, Schilke, or Morrow without the prior approval of the court.

The December 9, 1983, letters of coconservatorship provided, in part, that as coconservators, Line and Schilke "shall not exercise the following powers without prior order of the Court: 1. You shall not pay yourselves as Co-conservators. 2. You shall not pay yourselves attorney's fees. 3. You shall not sell real estate." Line and Schilke administered the estate until Walter Snover's death on December 24, 1985. Their final report was filed January 13, 1986, and Line, as personal representative of the Walter Snover estate, acknowledged receipt of the estate property on that date. On May 18, 1987, Schilke filed an "affidavit and application" in the conservatorship seeking conservator fees.

Walter Snover died on December 24, 1985. His last will and testament, executed February 21, 1980, and a codicil to that will were admitted to probate on January 10, 1986. The codicil, executed October 1, 1981, changed the original designated personal representative and nominated Morrow and Line as copersonal representatives. Although Morrow declined to serve, Line accepted the appointment. The letters of personal representative filed January 10, 1986, authorized Line "to do and perform all acts which may be authorized by law."

Walter Snover's will devised real estate to Merrill, Dale, and

Dorothy. In addition, Dorothy received the balance owed to her father from the sale to her of real property. Dorothy, Merrill, and Clara each received an interest in the balance of a contract for the sale of land to Dale on February 19, 1980. The residue of the estate, listed in the inventory as $40,099.78 in "Mortgages, Notes and Cash," was left to Merrill, Dale, and Dorothy in equal shares.

On March 11, 1986, Merrill and Dorothy filed a petition for supervised administration, alleging that supervised administration was necessary because Line had previously served as counsel for Dale in conjunction with disputes during the conservatorship, that various transactions involving Dale occurred during the conservatorship which should be reviewed or pursued by the personal representative, and that Line had a potential conflict of interest. Line had no objection to supervised administration, and supervised administration was ordered during the April 4, 1986, hearing on the petition. No written order of supervised administration was filed.

On January 8, 1987, Merrill and Dorothy filed a motion for accounting. An accounting filed by Line on January 16, 1987, reflected receipts of $41,862.23 and disbursements of $37,002.23, including $11,622 in attorney fees paid to Kerrigan, Line & Martin and a personal representative fee of $4,649 paid to Line. Line's accounting also stated that "[t]his estate cannot be closed immediately because I am defendant in a civil suit, Paul W. Morris, d/b/a Morris Oil Co. vs. Estate of Walter Snover, in the District Court of Dodge County, Nebraska, being Case No. 28464."

In a journal entry filed January 23, 1987, the county court approved Line's accounting, but ordered that Line resolve any remaining problems concerning closing the estate within 45 days. The order reflects that Line had advised the court that a federal estate tax return could be completed within this time and that Line would prepare a proposed plan and proposed · order for distribution. The court further ordered that Line "shall comply with that time schedule or notify the Court and counsel for the beneficiaries of any necessary adjustment in that time schedule in a timely fashion."

On May 12, 1987, appellees filed a motion to remove Line as

personal representative and for the return of estate assets, alleging, in part, (1) that Line had paid personal representative and attorney fees without court approval, notwithstanding the order for supervised administration; (2) that said fees were excessive; (3) that Line failed to comply with the county court's progression order of January 23, 1987, by failing to file a federal estate tax return and failing to submit a proposed plan for distribution; and (4) that Line breached his duty to protect the estate by submitting and failing to contest untimely claims for additional attorney fees incurred during the conservatorship of the decedent. Attached to the motion was a copy of an application for conservator fees filed by Line and Schilke on May 8, 1987, in the conservatorship proceeding.

As an interested person, the trustee in bankruptcy of the estate of Dale Snover filed a "Statement of Support for Motion for Removal of Personal Representative and Return of Estate Assets," joining in the prayer of Merrill and Dorothy to remove Line.

At the May 29, 1987, hearing on the motion to remove, counsel for Merrill and Dorothy informed the court that the federal estate tax return should have been filed within 9 months of the death of Walter Snover, that the return had not been filed, that no extension had been filed, and that interest and penalties against the estate were accruing as a result of Line's failure to resolve the federal estate tax matter.

During the May 29 hearing, the county court also admitted in evidence Line's deposition taken April 10, 1987. During the deposition, Line testified that he had not completed a federal estate tax return, that there was no reason it was not done yet, and that it would be done "probably within the next couple of weeks." At the hearing, Line stated that the federal estate tax would be approximately $35,000 and that since the net estate assets were insufficient to pay the federal estate tax, "the easiest thing would be to just dispose of the land of Merrill and Dorothy," since Dale Snover had declared bankruptcy, and the trustee in bankruptcy claimed Dale's share of the estate. Line further informed the court that the return could be filed, "but we're going to need some contribution . . . as to the federal estate tax . . . ."

The record does not contain a federal estate tax return or notification from Line to the court or counsel regarding the status of the estate or reasons why the estate could not be completed and closed.

Section 30-2454(b) provides that cause for removal of a personal representative exists

when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

With respect to Line's contention that the district court erred in finding that his payment of attorney and personal representative fees was contrary to an order for supervised administration, § 30-2439 provides:

A supervised personal representative is responsible to the court, as well as to the interested parties, and is subject to directions concerning the estate made by the court on its own motion or on the motion of any interested party. Except as otherwise provided in this part, or as otherwise ordered by the court, a supervised personal representative has the same duties and powers as a personal representative who is not supervised.

Section 30-2442 provides:

Unless restricted by the court, a supervised personal representative has, without interim orders approving exercise of a power, all powers of personal representatives under this code, but he shall not exercise his power to make any distribution of the estate without prior order of the court. Any other restriction on the power of a personal representative which may be ordered by the court must be endorsed on his letters of appointment and, unless so endorsed, is ineffective as to persons dealing in good faith with the personal representative.

In orally granting appellees' petition for supervised

administration, the county judge ordered only that "[t]he Court will grant the petition and order that the Estate No. 17011, In the Matter of the Estate of Walter Snover, Deceased, be handled by supervised administration." The record does not show that any other restrictions were ordered by the court or endorsed on Line's letters of appointment. Although an order for supervised administration may include a restriction that the personal representative may not pay attorney or personal representative fees without the prior order of the court (see § 30-2450), such relief was not requested in appellees' petition for supervised administration. The lack of appropriate restrictions in connection with Line's supervised administration has caused a substantial part of the problems in this estate. The record shows that Line retained all powers of personal representatives under the probate code except the power to make distributions of the estate without prior order of the court.

Section 30-2476(21) authorizes a personal representative to employ attorneys to assist the personal representative in the performance of his administrative duties. Section 30-2476(18) specifically provides that the personal representative may pay "compensation of the personal representative, and other expenses incident to the administration of the estate." Under § 30-2487(a), costs and expenses of administration have priority over all other claims against the estate. As defined in § 30-2209(11), a "distributee" is any person who receives property of the decedent from the personal representative other than as a creditor or purchaser.

We determine that Line's payments of attorney and personal representative fees were not "distributions" of the estate and that the payment of these fees did not violate the order for supervised administration. See *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988). Whether such payments were appropriate, in view of the heated nature of this probate proceeding, is not for this court to decide. The reasonableness of the compensation paid to Line and his law firm may be reviewed pursuant to § 30-2482. The payment of fees, therefore, did not constitute grounds for removal of the personal representative. The district court's finding to the

contrary was erroneous.

We do determine, however, that Line's inactivity with respect to the federal estate tax return and failure to provide a proposed plan and proposed order for distribution clearly violated the county court's progression order of January 23, 1987, and was not in the best interests of the estate. Where the county court had ordered a certain progression, such unexplained inactivity by the personal representative constituted grounds for removal. The personal representative "is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this code, and as expeditiously and efficiently as is consistent with the best interests of the estate." § 30-2464(a).

The record shows that the progression order was entered after Line informed the court that he could resolve problems with contested claims and the federal estate tax return within 45 days, that is, by March 9, 1987. During his deposition on April 10, Line stated that the federal estate tax return would be prepared within 2 weeks. At the May 29 hearing, Line admitted he had not yet prepared the federal estate tax return and stated that the federal estate tax would be approximately $35,000. Line also failed to advise the court and counsel for the appellees that any adjustment was needed with respect to the 45-day schedule.

In the absence of any communication from Line as to why he could not comply with the progression order, Line's conduct constituted a breach of his duty to the court and to the estate. It was shown at the May 29 hearing that Line failed totally to comply with the order of the court. Under these circumstances, the county court erred in failing to remove Line as personal representative, and the district court was correct in reversing the county court order and ordering Line removed as personal representative.

The judgment of the district court is affirmed.

AFFIRMED.