IN RE APPLICATIONS A-14137, A-14138A, A-14138B, AND A-14139.
CENTRAL NEBRASKA CONSERVATION ASSOCIATION, INC., AND CENTRAL PLATTE NATURAL RESOURCES DISTRICT, APPELLANTS, V. CITY OF FREMONT ET AL., APPELLEES.

480 N.W.2d 709

Filed February 28, 1992.   No. S-91-315.

James E. Doyle IV, of Cook, Wightman & Doyle, and Duane A. Burns for appellants.

Lyle B. Gill, Fremont City Attorney, for appellee City of Fremont.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee Upper Big Blue Natural Resources District.

George E. Svoboda, of Sidner, Svoboda, Schilke, Thomsen, Holtorf & Boggy, for appellees Lower Platte North Natural Resources District and National Audubon Society.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The Central Nebraska Conservation Association, Inc. (CNCA), and the Central Platte Natural Resources District (Central Platte) appeal the order of the director of the Department of Water Resources dismissing CNCA's applications for water appropriations and intentional ground

water storage.

On appeal, the Supreme Court reviews orders of the Director of Water Resources for errors appearing in the record and to determine whether the judgment conforms to law, is supported by relevant evidence, and is not arbitrary, capricious, or unreasonable. *In re Applications T-61 and T-62*, 232 Neb. 316, 440 N.W.2d 466 (1989); *In re Applications A-15145, A-15146, A-15147, and A-15148*, 230 Neb. 580, 433 N.W.2d 161 (1988); *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987); *In re Application A-15738*, 226 Neb. 146, 410 N.W.2d 101 (1987). See Neb. Rev. Stat. § 46-210 (Reissue 1988).

## BACKGROUND

The record shows that CNCA is a nonprofit corporation organized by a group of farmers from the rural areas near Wood River, Cairo, and Shelton, Nebraska. CNCA's Prairie Bend project is a proposed water diversion project on the Platte River to replenish ground water supplies depleted due to irrigation. The proposed project is located within the Central Platte Natural Resources District.

On April 1, 1976, CNCA filed four applications for water appropriations for the project, as follows:

| No. | Source | Use | Amt. Requested |
|---|---|---|---|
| A-14137 | Platte River | natural flow for irrigation | 1,000 cubic feet per second |
| A-14138A | Platte River | storage in Wood River Reservoir | 280,000 acre-feet |
| A-14138B | Wood River | storage in Wood River Reservoir | 280,000 acre-feet |
| A-14139 | Platte River | storage in Twin Prairie Reservoir | 72,000 acre-feet |

On May 7, 1976, CNCA requested that the department hold these applications pending until the project was ready for construction, and the applications were placed in a pending status. Early in 1979, however, CNCA was informed that the department intended to either approve or dismiss the applications. On May 15, 1979, CNCA's applications were ordered approved on the conditions that maps be filed and construction commenced by November 15, 1979. The

approvals specified that construction was to be completed by November 15, 1989, with water being beneficially applied by October 1, 1995.

In the fall of 1979, CNCA filed a petition for a 6-year extension, requesting postponement of all the deadlines imposed by the May 15, 1979, approvals. The reasons given in support of the petition generally related to the size and complexity of the project and the need for a feasibility study. After a hearing, the director issued orders on January 7, 1980, granting a 2-year extension. In other words, maps were to be filed and construction begun by November 15, 1981.

However, on October 29, 1981, CNCA filed a second petition for extension of time, citing the same supporting reasons. Another hearing was held, and CNCA was given until December 31, 1983, to file evidence showing that a feasibility study had been initiated. CNCA filed these documents on December 6, 1983.

On January 5, 1984, CNCA was given until March 1, 1984, to file a plan and work schedule to complete the feasibility study. This order also required CNCA to file annual reports and to file the following items before December 31, 1987: (1) final report of the feasibility study, (2) assessment of the feasibility study recommendations as they would relate to CNCA's applications and other Platte River projects, and (3) a threatened or endangered species biological determination of nonjeopardy prepared by the Nebraska Game and Parks Commission (Game & Parks). CNCA complied with the directives to file a plan and schedule and to file annual reports.

On December 24, 1987, CNCA filed a third petition for extension of time. Notice was issued, and the following organizations filed requests to become parties: Central Platte, interested party; Lower Platte North Natural Resources District, objector; Twin Valley Conservation Association, interested party; Upper Big Blue Natural Resources District (Upper Big Blue), interested party; the City of Fremont, Nebraska, objector; and the National Audubon Society, objector.

A hearing was held on CNCA's petition, and on April 18, 1988, the director issued an order allowing CNCA until June

15, 1988, to file a feasibility study, a biological assessment of the project, and any necessary permit application amendments and to provide information needed for consultation with Game & Parks.

On June 15, 1988, CNCA filed (1) a petition to amend three of the permits previously granted and to dismiss application A-14138B; (2) new applications A-16659 through A-16663; (3) relocation petitions P-454 through P-456 concerning the amendment of applications A-14137, A-14138A, and A-14139; (4) application U-11 for intentional ground water storage; (5) a feasibility study; and (6) a biological assessment. The department initiated endangered and threatened species consultation on October 13, 1988, pursuant to the Nongame and Endangered Species Conservation Act, Neb. Rev. Stat. §§ 37-430 through 37-438 (Reissue 1988).

ORDER OF MARCH 30, 1989

On March 22, 1989, CNCA filed an amended petition to amend its permits. A major amendment proposed by CNCA involved moving the point of diversion for the project from a site near Lexington, Nebraska, which is located upstream from the canal return for the Central Nebraska Public Power and Irrigation District's Johnson Hydro Unit No. 2 (J-2 return) to a site near Kearney, Nebraska.

On March 30, 1989, the director entered an order providing that CNCA would bear the burden of proving its amendments (1) would not cause harm, (2) were for the same use as the use in the original applications, (3) were in the public interest, and (4) were permitted by statutes or department rules. The director further ordered that notice be given in order to learn if there were other parties potentially affected by CNCA's proposed amendments and that "following an opportunity for and rulings upon admission of additional parties, a schedule for proceeding further shall be issued." The notice issued by the department provided, "Parties are notified that on July 7, 1989, at 9:00 a.m. in Room E, Lower Level, Nebraska State Office Building, 301 Centennial Mall South, Lincoln, Nebraska, arguments will be heard regarding whether [CNCA's] amendments to appropriations should be allowed."

. Meanwhile, a report prepared by Game & Parks concerning threatened or endangered species was filed with the department on May 5, 1989. The Game & Parks report did not address any of the modifications contemplated in CNCA's March 22, 1989, filings. One conclusion reached in the report was that the Prairie Bend project would jeopardize the continued existence of four threatened or endangered species. As a means to avoid jeopardy and still satisfy CNCA's apparent goals, the Game & Parks report outlined an alternative operational schedule. Even though CNCA had not included it in any of its applications, the Game & Parks alternative included utilization of the Plum Creek Reservoir.

ORDER OF SEPTEMBER 22, 1989

On July 7, 1989, a hearing was held on all of CNCA's proposed amendments and relocation petitions. The director's order of September 22, 1989, concludes:

By now officially proposing to move its diversion location from upstream of the J-2 hydropower return to downstream of it, [CNCA] effectively requests a location where a much larger quantity of water is available from the Platte River than was available under terms of its approved applications. Although [CNCA] contends it always intended to capture and utilize J-2 return flows, the location of its approved diversion location is upstream of the J-2 return.

Accordingly, the director denied CNCA's proposed amendments and relocation petitions; set aside the department's May 15, 1979, approvals of original applications A-14137, A-14138A, A-14138B, and A-14139; and set a date to show cause why these four applications should not be dismissed because they no longer reflected the project originally proposed.

ORDER OF JANUARY 5, 1990

CNCA requested a rehearing, and the order to show cause was temporarily stayed. CNCA's petition for rehearing was denied on January 5, 1990. CNCA then appealed to this court, but the appeal was summarily dismissed because it was not timely filed. See *In re Appropriations A-14137 et al.*, 235 Neb.

xxviii (case No. 90-126, Mar. 29, 1990). Thus, the September 22, 1989, order of the director became the law of the case. The stay was then rescinded, and CNCA was given until September 1, 1990, to show cause why its applications should not be dismissed.

## ORDER OF MARCH 4, 1991

On August 31, 1990, CNCA filed a response to the show cause order, stating that CNCA originally intended to appropriate and impound water from the Platte River "for the purposes of irrigation and to offset groundwater depletions." The response acknowledged that CNCA originally proposed to divert water from the Platte River at a site near Lexington, located upstream from the J-2 return. CNCA's original applications also proposed delivering the water from the point of diversion to two reservoirs by way of a 71-mile canal.

The response to the show cause order further states that after the director entered the September 22, 1989, order denying CNCA's motions to amend its applications, CNCA examined its applications and consulted with various state and federal agencies, including Central Platte and the U.S. Bureau of Reclamation, and independent consultants to obtain the most recent information available concerning the availability of water in the Platte River, the needs for such water for ground water recharge, ground water quality, irrigation, fish and wildlife habitat enhancement, and the best use of Platte River water for the satisfaction of such needs. As a result of the studies, CNCA concluded that its original applications were "suitable and satisfactory to serve and meet the needs of the project area and that the reservoirs, canals and diverted water contemplated by the project will provide needed enhancement of endangered and threatened species habitat."

CNCA also informed the director that the Prairie Bend project, as originally proposed, was studied as early as 1983 by the U.S. Bureau of Reclamation as a means of providing augmentation flows. The project was not given further consideration in this regard until early 1990, after studies conducted by the U.S. Bureau of Reclamation and the U.S. Fish and Wildlife Service showed that certain flows were

required in the Platte River at specific locations near Kearney for whooping crane and sandhill crane habitat. The studies revealed that the flow requirements could not be provided in periods of low flow in the Platte River unless the flow was augmented by the release of water stored in manmade reservoirs. In its showing of cause, CNCA maintained that augmentation flows could best be provided from certain reservoirs located in the Prairie Bend project area, through the use of a floodway from the Wood River to the Platte River, and from the water supplied from the canals and water facilities proposed by CNCA.

The showing of cause further alleges that the needs for ground water recharge and ground water quality improvements in the project area have continued to increase; that there was a sufficient and adequate water supply above the J-2 return to accommodate the project and augmentation flows; that if CNCA's facilities were used to augment flows for habitat for threatened and endangered species, a significant portion of the cost of such canals and related water facilities would be paid for by the federal government; and that the use of CNCA's facilities for habitat enhancement made the project feasible under environmental criteria.

In light of the foregoing, CNCA claimed that its original applications were more suitable for the original purposes for which they were filed and that the canals and related water facility works as originally proposed by CNCA would provide the best method of efficiently and economically augmenting the flows required for the habitat of the sandhill crane and the whooping crane.

Pursuant to CNCA's request, a hearing was held on November 5, 1990. On March 4, 1991, the director ordered that CNCA's original applications be dismissed.

## ASSIGNMENTS OF ERROR

CNCA and Central Platte timely appealed to this court, contending that the director's orders of March 30, 1989, September 22, 1989, January 5, 1990, and March 4, 1991, were arbitrary, capricious, and unreasonable and were contrary to law and the evidence in the case. The appellants also contend

that the director erred in treating Upper Big Blue as an appropriator, in connection with the September 22, 1989, order.

ORDERS OF MARCH 30, 1989,
SEPTEMBER 22, 1989, AND JANUARY 5, 1990

As stated above, CNCA brought an earlier appeal in this case (the first appeal) challenging the director's order of September 22, 1989. (Although Central Platte became a party of record in early 1988, it was not an appellant in the earlier appeal.) The first appeal was summarily dismissed for lack of jurisdiction because it was not timely filed. See *In re Appropriations A-14137 et al.*, 235 Neb. xxviii (case No. 90-126, Mar. 29, 1990). In light of that ruling, the appellees contend that CNCA and Central Platte are precluded from raising issues related to that order in this appeal. The appellants now contend that CNCA's first appeal was premature and that the director's order of September 22, 1989, did not constitute a final order when the first appeal was filed; therefore, they now argue that the validity of the September 22, 1989, order is properly before the court in this appeal.

This court does not have jurisdiction to consider appeals from nonfinal orders. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). Neb. Rev. Stat. § 25-1902 (Reissue 1989), defining the term "final order," provides:

[1] An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, [2] and an order affecting a substantial right made in a special proceeding, [3] or upon a summary application in an action after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter.

As we said in *In re Interest of R.G.*, the three types of final orders described in § 25-1902 share the requirement that a substantial right be affected.

In addition, the first category requires that the order arise in an "action" and that it "in effect determines the action and prevents a judgment." The second type requires only that the order affect a substantial right in a "special proceeding"; unlike the first type, there is no

corresponding requirement that the order effectually determine the action and prevent a judgment.

*In re Interest of R. G.*, 238 Neb. at 411, 470 N.W.2d at 786.

The appellants argue that the first appeal did not involve a final order because the case at bar was not completely disposed of by the September 22 order and the Department of Water Resources retained jurisdiction over the original applications. Upper Big Blue claims the orders were final because they affected a substantial right in a special proceeding.

In *In re Interest of R.G.*, we recognized that this court has, for over 100 years, construed the phrase "special proceeding" to mean every civil statutory remedy which is not encompassed in what is now chapter 25 of the Nebraska Revised Statutes. See, e.g., *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989) (effort to remove personal representative was a special proceeding); *Grantham v. General Telephone Co.*, 187 Neb. 647, 193 N.W.2d 449 (1972) (summary judgment); *Ropken v. Ropken*, 169 Neb. 352, 99 N.W.2d 480 (1959) (divorce action); *Sullivan v. Storz*, 156 Neb. 177, 55 N.W.2d 499 (1952) (suit for breach of promise of marriage and seduction); *Egan v. Bunner*, 155 Neb. 611, 52 N.W.2d 820 (1952) (accounting by personal representative); *Turpin v. Coates*, 12 Neb. 321, 11 N.W. 300 (1882) (order discharging garnishees).

We conclude that proceedings before the Department of Water Resources brought pursuant to Neb. Rev. Stat. § 46-209 (Reissue 1988) also are special proceedings for purposes of § 25-1902. Since the order of September 22, 1989, arose in a special proceeding, the issue is whether that order affected a substantial right of CNCA. See *In re Interest of R. G., supra.*

A substantial right is " 'an essential legal right as distinguished from a mere technical one.' " *In re Estate of Snover*, 233 Neb. at 202, 443 N.W.2d at 898 (quoting *Sullivan v. Storz, supra*).

Three of the orders referred to in the appellants' assignments of error pertained to the subject matter of the July 7, 1989, hearing on CNCA's proposed amendments and relocation petitions. As set forth above, the March 30, 1989, order provided that CNCA would bear the burden of proving its amendments (1) would not cause harm, (2) were for the same

use as the use in the original applications, (3) were in the public interest, and (4) were permitted by statutes or department rules. The dispositive order of September 22, 1989, denied CNCA's proposed amendments and relocation petitions and set aside the department's May 15, 1979, approvals of applications A-14137, A-14138A, A-14138B, and A-14139. CNCA's petition for rehearing was denied on January 5, 1990.

The effect of the September 22 order was to deny CNCA the right to go forward with its project as amended. The fact that the director retained jurisdiction over the original applications was only incidental to the findings in the September 22 order, since the only issue remaining was whether CNCA's original applications should be dismissed. Under the circumstances, we hold that the September 22, 1989, order affected CNCA's substantial rights.

The September 22 order which was the subject of CNCA's first appeal was final and appealable when it was entered; however, this court did not acquire jurisdiction over the first appeal because it was not timely filed. Thus, CNCA is in the same position in which it would have been if it had not previously attempted to appeal the September 22 order.

Neb. Rev. Stat. § 46-238(1) (Reissue 1988), provides, in part, "A failure to carry on the construction of either an irrigation or water power project as outlined in this section shall work a forfeiture of the appropriation and all rights thereunder, and the department shall cancel such appropriation." The director had the authority to set aside the department's prior approvals, pursuant to § 46-238, and that order is not void.

Also, CNCA has, in essence, acquiesced, as further demonstrated in its showing of cause filed with the department on August 31, 1990. In that document, CNCA informed the director that

[d]ue to the recent information developed concerning augmentation flows, CNCA's Applications are not in need of the amendments sought in June of 1988 and as currently filed such original Applications constitute a project which is economically and environmentally feasible and which has an adequate and reliable water supply.

If this court did not have jurisdiction to consider the merits of the September 22 order when the first appeal was filed, we certainly did not acquire jurisdiction over the matter by the passage of another 18 months. The appellants' assertions to the contrary are without merit, and the only issues properly raised in this appeal pertain to subsequent hearings and the director's final order of March 4, 1991.

## ORDER OF MARCH 4, 1991

As discussed above, CNCA filed its response on August 31, 1990, to the director's order to show cause why the four original applications should not be dismissed because they no longer reflected the project originally proposed in 1976. A hearing was held on November 5, 1990, resulting in the director's order of March 4, 1991, dismissing CNCA's original applications. The only issue properly raised in this court is whether the March 4 order conforms to law, is supported by relevant evidence, and is not arbitrary, capricious, or unreasonable.

On this question, the record shows that CNCA's original applications described a direct surface irrigation project for 70,000 acres. The original applications also called for two storage reservoirs, the waters impounded in each to be used for irrigation.

At the November 5 hearing, CNCA's chairman, Ronald Hargens, testified that CNCA wanted to proceed with the original applications because it did not intend to change the purpose of the project. Hargens also referred to investigations conducted for CNCA by the U.S. Fish and Wildlife Service and the U.S. Bureau of Reclamation. According to Hargens, the results of those investigations suggested that other uses of the water would be appropriate, including use for wildlife enhancement, ground water quality enhancement, and ground water recharge. Consequently, Hargens indicated that CNCA would use project water "[p]robably for irrigation, wildlife enhancement, groundwater quality enhancement, and, finally, recharge."

In his order, the director concluded that Hargens' testimony was "general but clearly contradictory." The record supports the director's conclusion that Hargens' testimony did not

demonstrate a firm commitment on the part of CNCA to proceed with its original intentions.

Central Platte's general manager, Ronald Bishop, also testified on behalf of CNCA. Bishop has been CNCA's advisor since 1976. He testified that Central Platte had filed its own set of applications for a proposed Prairie Bend II project, to be pursued in the event CNCA's applications were not allowed. Bishop went on to indicate that there is not a need for both projects in the area.

More uncertainty about the project was revealed in other testimony. Hargens, Bishop, and Duane Woodward, a hydraulic engineer employed by the U.S. Bureau of Reclamation, all noted the need for additional planning. Woodward testified that the project required at least 5 more years of planning and that perhaps then a clear outline of the project's precise configuration and purpose would be known. We conclude, as did the director, that the testimony of these witnesses did not suggest a single focus upon achieving CNCA's original objectives. As a result, their testimony also undermined CNCA's showing of cause.

CNCA's application U-11 sought authority for intentional underground water storage. During the November 5 hearing, Hargens testified that application U-11 was not essential and could be dismissed. In addition to yet another weakening of CNCA's show cause efforts, Hargens' admission (and implicit invitation) establishes justification for dismissing application U-11.

The March 4, 1991, order concludes:

> More than 14 years have passed since CNCA filed its first applications. Over that time period, it was afforded ample opportunity to refine and perfect its plans. That task remains incomplete. It is apparent that CNCA does not know specifically what it wants to construct. From the November 5 record, enough is known, however, to conclude that CNCA no longer intends to pursue a project designed to meet only its initial goals. Its attempt to demonstrate that its current intentions parallel those it originally had, fell short.

We have reviewed the record and determine that the

director's judgment conforms to law, is supported by relevant evidence, and is not arbitrary, capricious, or unreasonable. The appellants' assertions to the contrary are without merit.

The order of the director is affirmed.

AFFIRMED.