Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/09/2022 08:06 AM CDT

Tegra Corporation, individually and on behalf
of Lite-Form Technologies, L.L.C., appellant
and cross-appellee, v. Patrick E. Boeshart
et al., appellees and cross-appellants.

___ N.W.2d ___

Filed June 17, 2022.    No. S-21-547.

1. **Jurisdiction.** The question of jurisdiction is a question of law.
2. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
3. **Judgments: Final Orders: Words and Phrases.** A judgment is the final determination of the rights of the parties in an action.
4. **Judgments: Words and Phrases.** Every direction of the court made or entered in writing and not included in a judgment is an order.
5. **Final Orders: Appeal and Error.** To be appealable, an order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) and, additionally, where implicated, Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).
6. **Actions: Parties: Final Orders: Appeal and Error.** Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) is implicated where there are multiple causes of action or multiple parties and the court enters a final order as to one or more but fewer than all of the causes of action or parties.
7. **Claims: Parties: Final Orders.** In the absence of an express determination that there is no just reason for delay upon an express direction for the entry of judgment, orders, however designated, adjudicating fewer than all claims or the rights of fewer than all the parties are not final.
8. **Actions: Parties: Final Orders: Appeal and Error.** One may bring an appeal pursuant to Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) only when (1) multiple causes of action or multiple parties are present, (2) the court enters a final order within the meaning of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) as to one or more but fewer than all of

the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal.

9. **Claims: Parties: Appeal and Error.** Absent an entry of judgment under Neb. Rev. Stat. § 25-1315 (Reissue 2016), no appeal will lie unless all claims have been disposed as to all parties in the case.

10. **Final Orders: Appeal and Error.** Final orders under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) are carefully circumscribed to avoid piecemeal review, chaos in trial procedure, and a succession of appeals granted in the same case to secure advisory opinions to govern further actions of the trial court.

11. **Final Orders: Words and Phrases.** A special proceeding occurs where the law confers a right and authorizes a special application to a court to enforce the right.

12. **Actions: Final Orders: Statutes.** A special proceeding includes every special statutory remedy that is not in itself an action; thus, special proceedings and actions are mutually exclusive categories.

13. **Actions: Statutes: Words and Phrases.** An action is any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by the statute and ending in a final judgment.

14. **Actions: Final Orders.** While a special proceeding may be connected with an action in the sense that the application for the benefit of it and the other papers and orders concerning it may be filed in the case where the record of the filings in the action are made, it is not an integral part of the action.

15. ____: ____. None of the many steps or proceedings necessary or permitted to be taken in an action to commence it, to join issues in it, and conduct it to a final hearing and judgment are special proceedings.

16. **Actions: Final Orders: Statutes.** Regardless of a statutory remedy's location within Nebraska's statutes, actions and special proceedings are mutually exclusive.

17. **Statutes: Public Officers and Employees.** Where the Revisor of Statutes happens to put a proceeding does not alter the nature of the proceeding.

18. **Statutes.** A proceeding is not special by the sole virtue of it being placed outside of chapter 25 of the Nebraska Revised Statutes.

19. **Derivative Actions.** Derivative actions are not special proceedings.

20. **Derivative Actions: Equity: Words and Phrases.** A derivative action is an equitable proceeding in which a member of a limited liability corporation asserts, on behalf of the corporation, a claim that belongs to the corporation rather than to the member.

21. **Derivative Actions: Complaints.** While a derivative action requires the extra step of making a demand on the other members or managers to cause the company to bring the action to enforce the right and requires that the complaint state the fact of such demand or that it was futile, it is an action.

22. **Corporations.** The purpose of a special litigation committee is to investigate the claims made in the action and determine whether pursuing the action is in the best interests of the company.

23. **Corporations: Derivative Actions.** The special litigation committee balances the rights and duties of the board and dissenting shareholders by providing a corporation with an important tool to rid itself of meritless or harmful litigation while preventing directors from using the committee to wrest control of bona fide derivative claims away from well-meaning plaintiffs.

24. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

25. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

26. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

27. **Final Orders: Time.** The duration of an order is relevant to whether it affects a substantial right.

28. **Final Orders: Appeal and Error.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.

29. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) include those legal rights that a party is entitled to enforce or defend.

30. **Final Orders: Appeal and Error.** An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.

31. **Final Orders.** The mere fact that a person is subjected to inconvenience, annoyance, discomfort, or even expense by a decree does not entitle that person to appeal from it, as long as he or she is not thereby concluded from asserting or defending claims of personal or property rights in any proper court. Being subjected to trial does not affect an essential legal right and thus does not affect a substantial right.

32. ____. An order to mediate does not affect any substantial right of the parties.

33. **Final Orders: Appeal and Error.** It would undermine the efficiencies inherent to mediation to allow interlocutory appeals of such

orders, which do not, in any event, diminish the underlying issues of the action.

34. **Appeal and Error.** While the parties may consider themselves inconvenienced by an order to mediate, the fact that a person is subjected to inconvenience by a court's order does not in and of itself entitle one to appeal.

Appeal from the District Court for Dakota County: Bryan C. Meismer, Judge. Appeal dismissed.

Mathew T. Watson and Erin R. Robak, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellant.

Scott D. Jochim, of Croker Huck Law Firm, for appellees.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Bataillon, District Judge.

Freudenberg, J.

## I. INTRODUCTION

In a derivative action, a minority shareholder brought suit on behalf of the manager-managed limited liability company (LLC). Pursuant to Neb. Rev. Stat. § 21-168 (Reissue 2012), the manager-defendants appointed a single-member special litigation committee to investigate and determine whether it was in the LLC's best interests to pursue the derivative action. The committee determined it was in the LLC's best interests for the derivative action to be settled on terms approved by the committee, which were to disclose to the LLC members certain issues and conduct a majority vote as to how they should be resolved. In reviewing the committee's report, the district court found that the committee acted with "enough disinterested independence and good faith," but that its recommendation for disclosure to and vote of the members was beyond the committee's statutory authority. The court ordered the parties to attempt mediation and thereafter report the outcome of the mediation and make further recommendations to the court. The minority shareholder appeals, and the defendants cross-appeal the order.

## II. BACKGROUND

### 1. Parties and Ownership Interests

Lite-Form Technologies, L.L.C. (Lite-Form), is an LLC with its principal place of business in South Sioux City, Nebraska. Patrick Boeshart is the president and sole manager of Lite-Form, and his wife, Sandra Boeshart, is the office manager and provides bookkeeping services to Lite-Form. Boeshart Management Company, L.L.C. (Boeshart Management), is an Iowa LLC that conducts business in Nebraska. Boeshart Management is wholly owned and controlled by Patrick and Sandra, with Sandra designated as the registered agent in Nebraska for Boeshart Management. Pat Boeshart Construction, L.L.C. (Boeshart Construction), is an Iowa LLC that conducts business in Nebraska. Boeshart Construction is wholly owned and controlled by Patrick. Patrick, Sandra, Boeshart Management, and Boeshart Construction are collectively referred to hereafter as "the Boesharts." Tegra Corporation (Tegra) is an Iowa corporation with its principal place of business in Sioux City, Iowa, and is a minority shareholder of Lite-Form.

There is some slight discrepancy between the parties' pleadings as to ownership percentages for Lite-Form. Accounting for this discrepancy, Tegra owns approximately 2.521 to 2.5237 percent of the membership units of Lite-Form, Patrick owns approximately 7.084 to 7.1714 percent of the membership units of Lite-Form, and Sandra owns approximately 7 to 7.0662 percent of the membership units of Lite-Form. The remaining minority members collectively own approximately 22.671 to 24.313 percent of the membership units of Lite-Form. Lite-Form International, L.C. (Lite-Form Int'l), owns approximately 60 to 60.5677 percent of Lite-Form. Tegra owns approximately 37.44 to 37.5755 percent of the membership units of Lite-Form Int'l, and therefore, it indirectly owns approximately 22.46 to 22.7586 percent of Lite-Form. Patrick owns approximately 49.766 to 49.9678 percent of the membership units of Lite-Form Int'l, and therefore, he indirectly

owns approximately 29.86 to 30.2643 percent of Lite-Form. Finally, Sandra owns approximately 6.745 to 6.7480 percent of the membership units of Lite-Form Int'l, and therefore, she indirectly owns approximately 4.05 to 4.08711 percent of Lite-Form.

## 2. Tegra's Lawsuit

Tegra, individually and on behalf of Lite-Form, filed a complaint against the Boesharts alleging breach of fiduciary duty, misappropriation and waste of corporate assets, unjust enrichment, conversion, and, as to Sandra, aiding and abetting a fiduciary breach. Tegra also alleged in its individual capacity that it had made a demand upon Lite-Form to produce information and documentation related to the claims set forth and that Lite-Form had wrongfully withheld that information from Tegra.

## 3. Appointment of Special Litigation Committee and Its Findings

Patrick, under the authority granted to LLCs by § 21-168, appointed Cody Carse as a single member special litigation committee (Committee) to investigate the claims asserted by Tegra and to determine whether pursuing the action was in the best interests of Lite-Form. The derivative action was stayed during the pendency of the Committee's investigation. The Committee subsequently timely filed its report and statement of determination with the court. Carse outlined his qualifications, which consisted of the fact that Carse is a certified public accountant, a certified fraud examiner, and certified in financial forensics. The report generally addressed the allegations of the complaint.

### (a) Conflicting-Interest Leases

The Committee found that leases between Boeshart Construction and Lite-Form and Boeshart Management and Lite-Form, challenged in the action, were for equipment

used by Lite-Form for legitimate business purposes but that some of the leases had rental rates that appeared to be above market. The Committee recommended that the leases be disclosed to all the members of Lite-Form and that the members holding at least a majority of all outstanding units vote to either (1) approve or modify any of the terms of the related-party leases retroactively back to the start of each lease, (2) determine if member approval must be required in the future before entering into any related-party lease, or (3) choose not to address the leases at all or take any action.

### (b) Diversion of Profits to Boeshart Family

On a claim of diversion of profits, the Committee found that on October 30, 2018, Lite-Form paid $600,000 to Patrick, $200,000 to Patrick and Sandra's son, and $200,000 to Patrick and Sandra's daughter. Patrick loaned the $600,000 back to Lite-Form, but the loan was reduced to $487,194.03 by July 3, 2019. The $512,805.97 net cash paid out by Lite-Form was repaid to Lite-Form by a deposit of $234,867.03 made on December 23, 2019, and a deposit of $277,938.94 made on January 17, 2020. While the derivative action alleged Lite-Form had lost use of the $1 million for over a year, incurred additional professional fees to unwind the transaction, and incurred Internal Revenue Service penalties and interest due to the payment and unwinding of the transaction, the Committee noted it had not been provided with any documentation regarding additional professional fees or Internal Revenue Service penalties and interest. As a resolution, the Committee recommended that all the details of the $1 million bonus transaction be disclosed to the members of Lite-Form, including any expenses incurred by Lite-Form due to the loss of use of the money that was paid out on October 31, 2018, and not fully repaid until January 17, 2020, and that the members thereafter vote to determine if Lite-Form should be reimbursed by Patrick for any expenses incurred due to the transaction.

(c) Unauthorized Salaries,
Bonuses, and Benefits

With respect to alleged unauthorized salaries, bonuses, and benefits, the Committee found that, except for the $1 million bonus in 2018, Sandra and Patrick and Sandra's son were paid salaries comparable to other Lite-Form employees and that Patrick and Sandra's daughter's salary was based on her previous employer. It was a condition of her joining Lite-Form that Lite-Form would match the salary she was receiving previously. With respect to Patrick's salary, the Committee found that the operating agreement states the manager's salary and other compensation are subject to the approval of the members but does not state the manager must request approval from the members. It appeared that for the 18 years of Lite-Form's existence, the members had chosen not to specifically approve the salary and other compensation of the manager of the company. The Committee found it did not have a basis to evaluate the amount of Patrick's salary. It recommended that the relevant section of the operating agreement be discussed at the next member meeting.

(d) Luxury Vehicles

With respect to allegations concerning luxury vehicles, the Committee found that on July 28, 2002, Lite-Form entered into two leases with Lite-Form Int'l, which owned the vehicles, for a term from July 1 to December 31, 2002. The leases included $400 per month for general office and computer equipment and $4,800 per month for "Autos and Trailers." The Committee noted that although the written leases terminated on December 31, the monthly rental payments have continued through the present point in time for the same amounts and Lite-Form Int'l continued to provide Lite-Form with all the company-provided vehicles driven by Lite-Form employees. The Committee found that the vehicles were for the business and personal use of the Lite-Form employees and opined that providing company vehicles and having the employer pay for

license, taxes, and registration for company-provided vehicles is a common business practice. The Committee further found that the monthly rental payment of $4,800 has never changed over the years and that the cost to Lite-Form has been the same whether the company provided "'new and luxury cars' or 'old and cheap cars.'" Thus, the Committee concluded the purchase price of the vehicles had no impact on the cost to Lite-Form. The Committee recommended that the leases be discussed at the next Lite-Form member meeting, as well as whether Lite-Form should continue providing company vehicles to employees for business and personal use and paying for license, taxes, and registration of those vehicles.

### (e) Financial Mismanagement

In addressing the derivative action's allegations of financial mismanagement, the Committee found that Patrick uses a personal American Express credit card for both Lite-Form business purposes and personal purposes. The monthly statement is reviewed by Sandra, and she identifies which charges are personal and which are Lite-Form business expenses. The business expenses are then coded to the applicable Lite-Form general ledger account and are paid by Lite-Form to American Express. The personal purchases are paid by Patrick personally to American Express. The Committee's recommendation concluded, "This is a small business and Sandra . . . is very familiar with all of the charges made to [the American Express] account each month. She is quite capable of accurately identifying which charges are [Lite-Form] expenses and which charges are personal." Further, the Committee noted that Tegra had failed to provide the Committee with documentation supporting these allegations.

### (f) Wrongful Withholding of Information

With respect to allegations of wrongful withholding of information, the Committee stated, "It is the [Committee's] understanding that [the Boesharts] are following the advice

of their legal counsel with regard to production of the information requested in [Tegra's] October 22[, 2019,] Demand."

### (g) Statement of Determination

In a "Statement of Determination" in the report, the Committee "determined that it is in the best interests of [Lite-Form] that the derivative proceeding be settled on terms approved by the Committee." This was because, in Carse's professional opinion, "[the Boesharts'] actions do not justify continuing the derivative proceeding under the control of [Tegra]":

In summary, all the issues identified in the [Committee's] investigation can be resolved by the Members of [Lite-Form]. After the Members have been properly informed about the issues, the Members holding at least a majority of all outstanding Units and entitled to vote can determine how these issues should be resolved. In my professional opinion, the "majority of voting members" are quite capable of making the final decision on all of these issues.

Once the Members have met and voted, counsel shall report back to the Committee. Based upon the results of the meeting, the Committee may file a request with the Court to dismiss the pending action.

### 4. Evidentiary Hearing on Committee's Report

An evidentiary hearing was held to determine whether the district court would adopt the determinations in the report or continue the litigation in the control of Tegra. Carse was the only witness to testify.

Carse testified that all his opinions were made to a reasonable degree of accounting certainty. He viewed his role as the Committee to simply investigate and then have the court make a decision, and he "never made any decisions on behalf of the company."

Carse testified that in his role as the Committee, he did not "do anything from a legal interpretation standpoint," since

he was "not a lawyer." However, the Committee's legal counsel "didn't make any decisions on how to do [his] investigation" and was simply a "conduit" for information to the parties and to file things for the court.

Carse repeatedly stated that throughout his investigation, he believed it was "up to Tegra" to bring the evidence to him to support the allegations it was making.

Carse testified that as an accountant and business person reading the allegations and weighing the evidence he was provided, he felt the facts presented to him did not satisfy the claims that were in the lawsuit. Carse admitted he did not conduct a cost-benefit analysis in determining which of the four options to recommend. Instead, he simply determined there was no support for the alleged claims. Carse explained, "Based on what [Tegra] provided to me, I didn't think it would hold up in court." Therefore, he found no support for choosing options that would continue the litigation. However, Carse admitted that he did not know the legal elements of any of the allegations and, throughout his investigation, never asked the Committee's counsel for any legal advice or legal interpretations.

Still, Carse found evidence that some expenditures were "out of line." He believed his solutions of disclosure and voting on those matters would resolve those matters without requiring a lawsuit. Carse admitted in regard to the $1 million bonus that he did not quantify the cost of pursuing the claims or the potential recovery. He just "estimated it in [his] own mind" that a member meeting would be cheaper than to "tie up four attorneys and a judge and a court."

Thus, Carse ultimately recommended that many of the issues, such as the leases and the $1 million bonus, should be disclosed to the members of Lite-Form for a vote. Carse believed that recommendation constituted making a decision under § 21-168(d)(3) to "be settled on terms approved by the committee."

## 5. District Court Order

The district court found that Carse's review was consistent with someone of his background as a certified public accountant and a certified fraud examiner and that, in the court's opinion, "he reviewed the claims of [Tegra], did a records review, and found enough to recommend that the parties attempt settlement." The court ultimately found that the Committee acted "with enough disinterested independence and good faith to support a determination that the parties attempt to settle these claims."

Still, the court took issue with the fact that the Committee had made a recommendation directly beneficial to the Boesharts, who chose Carse. And the court believed it was beyond the statutory authority of the Committee to send matters to the members for a majority vote, because,

> [b]eyond the fact that these recommendations would seem to put [the Boesharts], accused of self-dealing, in a position to act in their own best interest and to the detriment of [Tegra] and its other members, there is no language in §21-168(d) that allows the [Committee] to make recommendations for [Tegra] to complete.

Thus, the court stated, "The [Committee] was authorized by statute to choose one of four options, it chose settlement, and the additional recommendations of the [Committee] will not be considered by this Court."

The court ordered the parties to attempt mediation of the claims outlined in the operative complaint. The court gave the parties 30 days to choose a mediator, and if no mediator could be agreed upon, the court stated it would determine the mediator.

The court stated that "[u]pon conclusion of Mediation, the [Committee] is Ordered to report to the Court the outcome of the mediation and make further recommendations per §21-168." It scheduled a status hearing for September 20, 2021.

## III. ASSIGNMENTS OF ERROR

Tegra assigns that the district court erred in (1) concluding the Committee satisfied its burden of establishing its investigation was conducted and its recommendation was made independently, in good faith, and with reasonable care as required by § 21-168; (2) concluding the Committee satisfied its burden of establishing it was independent as required by § 21-168; (3) determining the Committee made a determination of settlement permitted by § 21-168 and in accepting that determination despite finding aspects of it were not permitted by statute and possessed the appearance of impropriety; (4) excising aspects of the Committee's determination that the court found were improper and substituting mediation in an effort to remedy the impropriety, which is not permitted by § 21-168; (5) deferring to the determination of a Committee that was acting in a mere advisory capacity and without the delegated power to exclusively and conclusively determine whether pursuing the derivative action was in the best interests of Lite-Form; (6) failing to apply the correct standard of review under § 21-168, failing to impose the burden upon the Committee to satisfy § 21-168, and failing to address whether the Committee satisfied certain requirements of § 21-168, such as the requirement that the Committee conduct its investigation and make its recommendation with reasonable care; and (7) affording the Committee an opportunity to make a second determination under § 21-168.

In a cross-appeal, the Boesharts assign that the district court erred in failing to enforce the entirety of the Committee's recommendations after accepting its determination.

## IV. STANDARD OF REVIEW

[1] The question of jurisdiction is a question of law.[1]

## V. ANALYSIS

[2] The parties dispute whether we have jurisdiction over the present appeal. It is the power and duty of an appellate

---

[1] *Tyrrell v. Frakes*, 309 Neb. 85, 958 N.W.2d 673 (2021).

court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[2]

Under Neb. Rev. Stat. § 25-1911 (Reissue 2016), for an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.[3]

[3] A judgment is the final determination of the rights of the parties in an action.[4] In this case, there has not been a dismissal of the action or a final determination of its merits.

[4,5] Rather, Tegra seeks review of an order. Every direction of the court made or entered in writing and not included in a judgment is an order.[5] To be appealable, an order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020) and, additionally, where implicated, Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).[6]

## 1. Multiple Claims

[6,7] Section 25-1315(1) is implicated where there are multiple causes of action or multiple parties and the court enters a final order as to one or more but fewer than all of the causes of action or parties.[7] In the absence of an express determination that there is no just reason for delay upon an express direction for the entry of judgment, orders, however designated, adjudicating fewer than all claims or the rights of fewer than all the parties are not final.[8]

---

[2] *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 268.

[3] *In re Estate of Beltran*, 310 Neb. 174, 964 N.W.2d 714 (2021).

[4] *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

[5] *Id*.

[6] *Tyrrell v. Frakes, supra* note 1.

[7] *Rafert v. Meyer*, 298 Neb. 461, 905 N.W.2d 30 (2017).

[8] *TDP Phase One v. The Club at the Yard*, 307 Neb. 795, 950 N.W.2d 640 (2020).

[8,9] Section 25-1315(1) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

One may bring an appeal pursuant to § 25-1315(1) only when (1) multiple causes of action or multiple parties are present, (2) the court enters a final order within the meaning of § 25-1902 as to one or more but fewer than all of the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal.[9] Absent an entry of judgment under § 25-1315, no appeal will lie unless all claims have been disposed as to all parties in the case.[10]

There is some suggestion from the record that § 25-1315 may be implicated in this appeal. Tegra explained at oral arguments that its lawsuit stated a separate cause of action, individually and not on behalf of Lite-Form, for wrongfully withholding information and that the order herein appealed pertains only to Tegra's derivative claims brought on behalf

---

[9] *Id*.

[10] *Id.*

of Lite-Form. If we assume that this wrongful withholding of information allegation was a cause of action, rather than a theory of recovery,[11] and that the order Tegra appeals, directing mediation and further recommendations, did not adjudicate it or we assume Tegra, as an individual, was a separate party whose rights and liabilities were not adjudicated by the order, then the lack of an express determination by the court that there is no just reason for delay and direction for the entry of judgment would be fatal to our jurisdiction over this appeal. However, we conclude that regardless of the possible additional impediment of failing to satisfy § 25-1315, the order was not final under § 25-1902.

## 2. Final Order

[10] Final orders under § 25-1902 are carefully circumscribed to avoid piecemeal review, chaos in trial procedure, and a succession of appeals granted in the same case to secure advisory opinions to govern further actions of the trial court.[12] While there are four types of final orders under § 25-1902, the relevant inquiry under the facts of this case is whether the order directing mediation and further recommendations was "made during a special proceeding" and "affect[ed] a substantial right."

### (a) Special Proceeding

[11-13] A special proceeding occurs where the law confers a right and authorizes a special application to a court to enforce the right.[13] A special proceeding includes every special statutory remedy that is not in itself an action; thus,

---

[11] See *Poppert v. Dicke*, 275 Neb. 562, 747 N.W.2d 629 (2008).

[12] See, *In re Estate of Larson*, 308 Neb. 240, 953 N.W.2d 535 (2021); *In re Interest of Kamille C. & Kamiya C.*, 302 Neb. 226, 922 N.W.2d 739 (2019).

[13] *Champion v. Hall County*, 309 Neb. 55, 958 N.W.2d 396 (2021).

special proceedings and actions are mutually exclusive categories.[14] An action is any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by the statute and ending in a final judgment.[15] Every other legal proceeding by which a remedy is sought by original application to a court is a special proceeding.[16]

[14,15] While a special proceeding may be "connected with"[17] an action in the sense that the application for the benefit of it and the other papers and orders concerning it may be filed in the case where the record of the filings in the action are made, it is not an "integral part"[18] of the action. "None of the many steps or proceedings necessary or permitted to be taken in an action to commence it, to join issues in it, and conduct it to a final hearing and judgment" are special proceedings.[19] For example, a proceeding on a motion for summary judgment is not a special proceeding under § 25-1902 because it is "merely one particular tool that may be used to resolve certain issues in the case."[20]

---

[14] See, *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010); *Williams v. Baird*, 273 Neb. 977, 735 N.W.2d 383 (2007); *Pfeil v. State*, 273 Neb. 12, 727 N.W.2d 214 (2007); *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001); *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

[15] *In re Grand Jury of Douglas Cty.*, 302 Neb. 128, 922 N.W.2d 226 (2019); *In re Interest of D.I.*, 281 Neb. 917, 799 N.W.2d 664 (2011); *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009). See, also, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

[16] *Id.*

[17] *O'Connor v. Kaufman, supra* note 14, 255 Neb. at 123, 582 N.W.2d at 353 (internal quotation marks omitted).

[18] *Id.* at 124, 582 N.W.2d at 353 (internal quotation marks omitted).

[19] *Id.* at 123, 582 N.W.2d at 353 (internal quotation marks omitted). See, also, e.g., *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006).

[20] *O'Connor v. Kaufman, supra* note 14, 255 Neb. at 124, 582 N.W.2d at 354.

We have said that a "special proceeding" entails civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes.[21] Examples of special proceedings that are outside of chapter 25 include juvenile court proceedings,[22] involuntary commitment,[23] license revocation,[24] dissolution,[25] probate actions,[26] proceedings under the Nebraska Uniform Trust Code,[27] proceedings under the Uniform Deceptive Trade Practices Act,[28] workers' compensation cases,[29] condemnation actions,[30] proceedings before the Department of Water Resources,[31] and proceedings commenced by various motions under chapter 29, including postconviction relief, absolute discharge, competency, habeas corpus, public disclosure of grand jury documents,[32] motions for new trial based on newly discovered evidence,[33] motions to vacate and set aside judgments due to DNA or other forensic testing,[34] and pleas in bar.[35]

---

[21] *Williams v. Baird, supra* note 14.

[22] *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

[23] See, *In re Interest of D.I., supra* note 15; *In re Interest of Saville*, 10 Neb. App. 194, 626 N.W.2d 644 (2001).

[24] *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996).

[25] *Steven S. v. Mary S., supra* note 15.

[26] *In re Estate of Peters*, 259 Neb. 154, 609 N.W.2d 23 (2000). See, also, *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

[27] *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005).

[28] *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997).

[29] *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999).

[30] *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998).

[31] *In re Applications A-14137, A-14138A, A-14138B, and A-14139*, 240 Neb. 117, 480 N.W.2d 709 (1992).

[32] *In re Grand Jury of Douglas Cty., supra* note 15.

[33] *State v. Harris*, 307 Neb. 237, 948 N.W.2d 736 (2020).

[34] *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003).

[35] *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990).

[16,17] However, in *Kremer v. Rural Community Ins. Co.*,[36] we explicitly rejected the premise that a proceeding cannot be a special proceeding for purposes of § 25-1902 simply because the remedy is set forth in statutes encompassed in chapter 25. We stated "sometimes" special proceedings are located in chapter 25 and that, "regardless of a statutory remedy's location within Nebraska's statutes, actions and special proceedings are mutually exclusive."[37] While the Legislature may sometimes direct the Revisor of Statutes as to which chapter a section must be assigned,[38] it often does not. In the latter circumstance, it has been said that "[w]here the Revisor of Statutes happens to put a proceeding . . . does not alter the nature of the proceeding."[39]

Within chapter 25, we have held that orders granting applications to compel arbitration, staying judicial proceedings pending arbitration,[40] and denying motions to compel arbitration under alleged contractual agreements to arbitrate[41] are made in special proceedings.

[18] The underlying order herein appealed was made, broadly, within a derivative action on behalf of an LLC. We have never addressed whether a derivative action is a special proceeding. Derivative actions are governed by statutes outside of chapter 25, and we recognize that, historically, we have often concluded that orders were made during

---

[36] *Kremer v. Rural Community Ins. Co., supra* note 14. See, also, *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013).

[37] *Kremer v. Rural Community Ins. Co., supra* note 14, 280 Neb. at 597, 788 N.W.2d at 546.

[38] *State v. Sundling*, 248 Neb. 732, 538 N.W.2d 749 (1995).

[39] John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239, 279 (2001). See, also, Neb. Rev. Stat. § 49-705 (Reissue 2021).

[40] *Kremer v. Rural Community Ins. Co., supra* note 14.

[41] *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014); *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

special proceedings simply because the statutory remedies at issue were not encompassed within chapter 25.[42] However, we have recently held that a proceeding, which was governed by statutes outside of chapter 25, was not a special proceeding.[43] This is consistent with our reasoning in *Kremer* that the location of the governing statute is not determinative of whether an order is made in a special proceeding as opposed to in an action. We will no longer reason that a proceeding is special by the sole virtue of it being governed by statutes outside of chapter 25.

[19,20] We conclude that derivative actions are not special proceedings. A derivative action is an equitable proceeding in which a member of an LLC asserts, on behalf of the LLC, a claim that belongs to the LLC rather than to the member.[44] It is only a "derivative action" and governed by certain requirements of Neb. Rev. Stat. §§ 21-154 to 21-169 (Reissue 2012), by virtue of it being maintained by a member on behalf of the company. Otherwise, the nature of the derivative action is governed by whatever claims are made on behalf of the company, which claims, in turn, are governed by the uniform procedural rules found in chapter 25.

[21] Thus, while a derivative action requires the extra step of making a demand on the other members or managers to cause the company to bring the action to enforce the right[45] and requires that the complaint state the fact of such

---

[42] *Furstenfeld v. Pepin*, 287 Neb. 12, 840 N.W.2d 862 (2013); *Steven S. v. Mary S., supra* note 15; *In re Estate of Peters, supra* note 26. See, also, *In re Estate of Rose*, 273 Neb. 490, 730 N.W.2d 391 (2007); *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998); *SID No. 1 v. Nebraska Pub. Power Dist., supra* note 30; *Sid Dillon Chevrolet v. Sullivan, supra* note 28; *State v. Hansen, supra* note 24; *Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783 (1995).

[43] See *State v. Vela, supra* note 19.

[44] 51 Am. Jur. 2d *Limited Liability Companies* § 48 (2021).

[45] See § 21-165.

demand or that it was futile,[46] it is an action. It is a proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the pleadings, process, and procedure provided by the statute and ending in a final judgment.

Of course, the fact that derivative actions are not special proceedings does not necessarily determine whether orders under § 21-168, made when the LLC exercises the right set forth in § 21-168 to appoint a special litigation committee, are not made in a special proceeding. This is because, as stated, a special proceeding may be "connected with"[47] an action in the sense that the application for the benefit of it and the other papers and orders concerning it may be filed in the case where the record of the filings in the action are made. The question is whether proceedings under § 21-168 are an integral part of the main derivative action; i.e., whether they are just one of the many steps or proceedings necessary or permitted to be taken in the derivative action to commence it, to join issues in it, and conduct it to a final hearing and judgment.

To understand if proceedings under § 21-168 are one of the many steps of a derivative action or, instead, a special application authorized by a law conferring a special right, we must examine § 21-168 and the potential consequences of orders issued pursuant to that section. Section 21-168 provides in full:

（a) If a limited liability company is named as or made a party in a derivative proceeding, the company may appoint a special litigation committee to investigate the claims asserted in the proceeding and determine whether pursuing the action is in the best interests of the company. If the company appoints a special litigation

---

[46] § 21-167.

[47] O'Connor v. Kaufman, supra note 14, 255 Neb. at 123, 582 N.W.2d at 353 (internal quotation marks omitted).

committee, on motion by the committee made in the name of the company, except for good cause shown, the court shall stay discovery for the time reasonably necessary to permit the committee to make its investigation. This subsection does not prevent the court from enforcing a person's right to information under section 21-139 or, for good cause shown, granting extraordinary relief in the form of a temporary restraining order or preliminary injunction.

(b) A special litigation committee may be composed of one or more disinterested and independent individuals, who may be members.

(c) A special litigation committee may be appointed:

(1) in a member-managed limited liability company:

(A) by the consent of a majority of the members not named as defendants or plaintiffs in the proceeding; and

(B) if all members are named as defendants or plaintiffs in the proceeding, by a majority of the members named as defendants; or

(2) in a manager-managed limited liability company:

(A) by a majority of the managers not named as defendants or plaintiffs in the proceeding; and

(B) if all managers are named as defendants or plaintiffs in the proceeding, by a majority of the managers named as defendants.

(d) After appropriate investigation, a special litigation committee may determine that it is in the best interests of the limited liability company that the proceeding:

(1) continue under the control of the plaintiff;

(2) continue under the control of the committee;

(3) be settled on terms approved by the committee; or

(4) be dismissed.

(e) After making a determination under subsection (d) of this section, a special litigation committee shall file with the court a statement of its determination and its

report supporting its determination, giving notice to the plaintiff. The court shall determine whether the members of the committee were disinterested and independent and whether the committee conducted its investigation and made its recommendation in good faith, independently, and with reasonable care, with the committee having the burden of proof. If the court finds that the members of the committee were disinterested and independent and that the committee acted in good faith, independently, and with reasonable care, the court shall enforce the determination of the committee. Otherwise, the court shall dissolve the stay of discovery entered under subsection (a) of this section and allow the action to proceed under the direction of the plaintiff.

[22] The purpose of a special litigation committee is to investigate the claims made in the action and determine whether pursuing the action is in the best interests of the company.[48] This determination involves weighing, among other things, the merits of the litigation against the direct expenses of litigation and the indirect costs of litigation such as potential waste of management time and adverse public relations.[49] Generally the action is stayed during the investigation.[50]

[23] The special litigation committee balances the rights and duties of the board and dissenting shareholders by providing a corporation with an important tool to rid itself of meritless or harmful litigation while preventing directors from using the committee to wrest control of bona fide derivative claims away from well-meaning plaintiffs.[51] The court enforces the special litigation committee's business decision

---

[48] § 21-168.

[49] See Minor Myers, *The Decisions of the Corporate Special Litigation Committees: An Empirical Investigation*, 84 Ind. L.J. 1309 (2009).

[50] See *id.*

[51] 19 Am. Jur. 2d *Corporations* § 1965 (2015).

if the court finds that the members of the committee were disinterested and independent and that the committee acted in good faith, independently, and with reasonable care.[52] If the special litigation committee fails to prove those things, the suit continues under the control of the original plaintiff.[53]

Under § 21-168, assuming the court finds the special litigation committee has proved its members were disinterested and independent and that the special litigation committee conducted its investigation and made its recommendation in good faith, independently, and with reasonable care, the determination the court shall enforce will be one of four options recommended by the committee: (1) that the action continue under the control of the minority member plaintiff who brought it, (2) that the action continue under the control of the committee, (3) that the action be settled on terms approved by the committee, or (4) that the action be dismissed.[54] If the court does not find the special litigation committee has proved its members were disinterested and independent and that the committee conducted its investigation and made its recommendation in good faith, independently, and with reasonable care, then the result is, in essence, option one.

Under all of these options the LLC remains the plaintiff. Under options one and two, the action continues on its regular course under either the minority member's or the special litigation committee's direction as representative of the company plaintiff. Options three and four effectively put the control of the litigation in the hands of the special litigation committee, which has elected to resolve the matter through settlement or dismissal rather than litigate.

In the case of *Platte Valley Nat. Bank v. Lasen*,[55] we found analogous proceedings were not special for purposes

---

[52] See § 21-168.

[53] See *id.*

[54] See *id.*

[55] *Platte Valley Nat. Bank v. Lasen*, 273 Neb. 602, 732 N.W.2d 347 (2007).

of § 25-1902. Therein we held that regardless of the method under which revivor is sought, it is not a final order and cannot be appealed until a final judgment in the case is rendered. A revivor, we said, simply substitutes "'one party for another as an incident in the original cause'"; a representative takes the place of the deceased party and the action continues.[56] We reasoned that such an order is not made in a special proceeding; it is merely a step or proceeding within the overall action.

Likewise, proceedings under § 21-168 are fundamentally about which party controls the original cause. Either the minority member or the committee effectively takes the place of the LLC. As such, any proceedings under § 21-168 are merely a step in the underlying derivative action. Orders made pursuant to § 21-168 are not made during a special proceeding.

### (b) Substantial Right

[24-27] Furthermore, an order under § 21-168 does not affect a substantial right. A substantial right is an essential legal right, not a mere technical right.[57] A substantial right is affected if an order affects the subject matter of the litigation, such as by diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.[58] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[59] Thus, for example, the duration of an order is relevant to whether it affects a substantial right.[60]

[28-30] Whether the effect of an order is substantial depends on "'whether it affects with finality the rights of the

---

[56] *Id.* at 611, 732 N.W.2d at 353.

[57] *In re Estate of Beltran, supra* note 3.

[58] *Id*.

[59] *In re Interest of Zachary B.*, 299 Neb. 187, 907 N.W.2d 311 (2018).

[60] *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

parties in the subject matter.'"[61] Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend.[62] Most fundamentally, an order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.[63]

We held in *Platte Valley Nat. Bank* that revivor does not affect a substantial right, reasoning: "The fact that an order of revivor may move the case forward to trial does not mean that the order affects a substantial right of the opposing party. Ordinary burdens of trial do not necessarily affect a substantial right."[64] We said, further, that the order of revivor does not determine the rights of the parties to the action; rather, the cause is retained for further action.[65] We have similarly held that orders substituting party plaintiffs do not affect substantial rights of the parties in the cause.[66]

In *Cinatl v. Prososki*,[67] we held that an order denying an application to vacate an arbitration award does not affect a substantial right, despite the appellant's argument that the right to challenge the validity of an award through an application to vacate is an essential legal right. We reasoned that this argument overlooked the imminent appealability of an order confirming the award. We held that the right to challenge the validity of the award can be vindicated in an appeal from an order confirming the arbitration award, which must occur

---

[61] *In re Interest of Mekhi S. et al.*, 309 Neb. 529, 534, 960 N.W.2d 732, 757 (2021).

[62] *In re Estate of Beltran, supra* note 3.

[63] See, *Porter v. Porter*, 309 Neb. 167, 959 N.W.2d 235 (2021); *Gem City Bone & Joint v. Meister*, 306 Neb. 710, 947 N.W.2d 302 (2020); *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018).

[64] *Platte Valley Nat. Bank v. Lasen, supra* note 55, 273 Neb. at 611, 732 N.W.2d at 353.

[65] See *id.*

[66] See *Hall v. Vanier*, 7 Neb. 397 (1878).

[67] *Cinatl v. Prososki, supra* note 4.

within 60 days after a party's application to do so. To allow orders denying an application to vacate an arbitration award to be immediately appealable would frustrate the purposes of arbitration, which is to have quick resolution of disputes and avoid the expense and delay associated with litigation.[68]

The court orders enforcing special litigation committee determinations of options three or four lead, like in *Cinatl*, imminently to final judgments. Their effect as independent orders is of limited duration, and any delay in their enforcement does not substantially affect any substantial right.

Options one and two may result in protracted litigation that a party might later contend was controlled by the wrong person or entity, but, even so, such claimed right under § 21-168 can be effectively vindicated in an appeal from the final judgment of the derivative action. Unlike, for example, certain orders for the sale of real or personal property,[69] which we have held cannot be effectively vindicated in an appeal from the final judgment, any dispute about who controlled the derivative action is a dispute ultimately about money. The remedy for prejudicial error would be reversal and a potential new trial and its associated costs.

[31] As stated in *Platte Valley Nat. Bank*, ordinary burdens of trial do not necessarily affect a substantial right.[70] Similarly, in the context of the attempted appeal from the denial of a motion for summary judgment, wherein the appellant complained of being subjected to a long and expensive trial, we said, "The mere fact that a person is subjected to inconvenience, annoyance, discomfort, or even expense, by a decree does not entitle him to appeal from it, as long as he is not thereby concluded from asserting or defending his

---

[68] See *id.*

[69] See, *In re Estate of Beltran, supra* note 3; *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[70] *Platte Valley Nat. Bank v. Lasen, supra* note 55.

claims of personal or property rights in any proper court."[71] Being subjected to trial does not affect an essential legal right and thus does not affect a substantial right.[72]

Moreover, a party who initially suspects the motives or abilities of the person or entity controlling the litigation may ultimately be satisfied with its outcome, making the question of who represented the company moot. And it has been said that a relevant consideration in determining if an order is immediately appealable as a final order is whether it "may be mooted by subsequent developments in the litigation."[73]

We recognize that in this case the court neither enforced the determination of the Committee nor allowed the action to proceed under the direction of Tegra, because it was unconvinced the Committee properly chose one of the statutory options. In other words, the order being appealed from did not have the effect of one of the four statutory options discussed above. The court instead ordered mediation and further recommendations by the Committee. Both parties argue in this appeal that their right under § 21-168 to a binary choice between adopting the Committee's recommendation and allowing the action to proceed under the minority member's control was prejudiced and that the court exceeded its authority in ordering mediation. Tegra also asserts the Committee should not be given a second chance to make a proper recommendation. Even considering the unique nature of the order in question, we find it did not affect a substantial right.

[32-34] Mediation means a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute.[74] Any agreement or resolution made in mediation

---

[71] *Rehn v. Bingaman*, 157 Neb. 467, 472, 59 N.W.2d 614, 617 (1953).

[72] See *id.*

[73] Lenich, *supra* note 39 at 284.

[74] Neb. Rev. Stat. § 25-2931 (Reissue 2016).

or another form of alternative dispute resolution shall be voluntarily entered into by the parties.[75] One of the purposes of mediation is to efficiently reduce the volume of matters burdening the court system.[76] While it does not appear we have addressed the finality of mediation orders, in other jurisdictions, court orders directing the parties to participate in mediation and report back to the court are not immediately appealable.[77] We hold that an order to mediate does not affect any substantial right of the parties. It would undermine the efficiencies inherent to mediation to allow interlocutory appeals of such orders, which do not, in any event, diminish the underlying issues of the action. While the parties may consider themselves inconvenienced by an order to mediate, again, the fact that a person is subjected to inconvenience by a court's order does not in and of itself entitle one to appeal.[78]

As for the part of the court's order requiring further recommendations by the special litigation committee following the attempts at mediation, such order is inherently of temporary duration and a matter retained by the court for further action. Tegra's arguments about the rights affected by the order can be resolved in an appeal from the final judgment—in the event the dispute is not settled through mediation.

## VI. CONCLUSION

We understand that Tegra filed this appeal out of an abundance of caution and that our final order jurisprudence

---

[75] Neb. Rev. Stat. § 25-2943 (Reissue 2016).

[76] Neb. Rev. Stat. § 25-2902 (Reissue 2016).

[77] See, *Tutu Park, Ltd. v. O'Brien Plumbing Co., Inc.*, 180 F. Supp. 2d 673 (D.V.I. 2002); *Ellis v. Reynolds*, 368 Ark. 572, 247 S.W.3d 845 (2007); *Short Bros. Const. v. Korte & Luitjohan*, 356 Ill. App. 3d 958, 828 N.E.2d 754, 293 Ill. Dec. 444 (2005); *Fair Share Housing v. Cherry Hill*, 242 N.J. Super. 76, 576 A.2d 24 (1990); *Valley Coal v. Intern. Union, UMWA*, 402 Pa. Super. 141, 586 A.2d 436 (1991); *Walsh v. Larsen*, 705 N.W.2d 638 (S.D. 2005).

[78] *Hernandez v. Blankenship*, 257 Neb. 235, 596 N.W.2d 292 (1999).

has never addressed orders pertaining to special litigation committees. But, for the foregoing reasons, we find that the court's order for mediation and further recommendation is not a final order under § 25-1902. As a result, we lack jurisdiction over Tegra's appeal and the Boesharts' cross-appeal.

APPEAL DISMISSED.

HEAVICAN, C.J., not participating.